## SAMUEL ALCOCK & others *vs.* SOLOMON HOPKINS.

H., living in Boston, agreed by letter with A., living in Burslem, in England, for the purchase of goods of him, to be paid for by a bill of exchange drawn by A. on C. & Co. of London, at four months, which C. & Co. agreed to accept. The goods were accordingly delivered to H. by A., who drew his bill therefor at four months on C. & Co., by whom the same was accepted. A. negotiated the bill, in the ordinary course of dealing, for a valuable consideration, and at the time when it became due, it was in the hands of a *bonâ fide* holder, other than the drawer; C. & Co. having become bankrupt, before the maturity of the bill, the same was never paid by them, but was taken up and paid by A., who, having brought an action against H. for goods sold and delivered, produced the bill in court to be delivered up and cancelled. It was held, that the fact of the residence of A. and of C. & Co. in a country foreign to that in which H. lived, was not *primâ facie* evidence that the credit for the goods was given by A. to C. & Co.; that the negotiation of the bill by A. in the usual course of business, and for a valuable consideration, was no discharge of his claim for the price of the goods; and that A. might notwithstanding, recover on the original cause of action against H. for

goods sold and delivered ; but that in such case the current rate of exchange could not be allowed as part of the damages to be recovered.

THIS was an action of assumpsit for goods sold and deliver ed, tried before *Dewey*, J., in this court.

The plaintiffs carried on the business of potters in Burslem, in Staffordshire, England.    The defendant was a dealer in earthen-ware in Boston.    The goods, the price of which was sought to be recovered in this suit, were ordered by the defendant by letter, directed and sent to the plaintiffs.    The defendant, in his letter says, " I should like these goods on six months, by draft on Coates and company, London."    The plaintiffs did not accede to this proposal, but the defendant consented to take the goods, upon the plaintiffs' terms of credit, namely, four months ; and the goods were accordingly charged by the plaintiffs in account to the defendant, and shipped to him at two different times, and the invoices made out to him.    The plaintiffs, agreeably to the defendant's direction, drew on Coates and company for the amount, and received their acceptances for four months ; the plaintiffs having previously applied to them to know if they would so accept, on receiving the defendant's order for the goods ; and Coates and company having replied that they would so accept.

The bills were negotiated by the plaintiff, in the ordinary course of dealing, and passed though several hands, and were outstanding in the hands of *bonâ fide* holders, other than the plaintiffs, and not due, when Coates and company became bankrupt ; and the same having been protested for non-payment, have since been paid and taken up by the plaintiffs, and were produced by them in court, never having been paid by the acceptors.

On the trial, it was maintained, in behalf of the defendants, that the acceptances of Coates and company were received by the plaintiffs in payment for the goods, so that the defendant was not liable ; and this point was, by consent of parties, submitted to the jury, upon all the evidence, the substance of which on this point sufficiently appears in the opinion of the court.

The defendant also contended that, nothing appearing in

41 *

the evidence to show an agreement to the contrary, the circumstance that the defendant lived in a country foreign to that of both the plaintiffs and the commercial house by whom the business, on the part of the defendants, (except ordering the goods and fixing the prices and terms of payment,) was done, and who undertook to pay for the goods, was *primâ facie* evidence that the credit was to be given to that house only, to the exoneration of Hopkins. But the presiding judge ruled, that the circumstance that the defendant lived in a country foreign to that in which the plaintiffs and Coates and company, the acceptors of the drafts, lived, was not *primâ facie* evidence that the credit was given to Coates and company only, to the exoneration of all liability on the part of Hopkins; nor would those facts alone, there being no special agreement, establish a defence to the plaintiffs' claim.

The defendant further contended, that the negotiation by the plaintiffs, in the usual course of business, and for a valuable consideration, of the bills drawn by the defendant on and accepted by Coates and company, amounted to a satisfaction and extinction of all claim of the plaintiffs on account of the sales of merchandise to the defendant, and that the claim could not be afterwards revived by the plaintiffs' taking up the bills in the manner they did. But the judge ruled that such negotiation of the bills would not amount to a satisfaction and extinction of the plaintiffs' claim on the defendant on account of the sales of merchandise to him; the plaintiffs as indorsers, on the acceptors becoming insolvent before the maturity of the bills, having taken them up, and having them now in their hands ready to be surrendered and filed in court.

The jury returned a verdict for the plaintiffs, for the principal of their claim, interest, and exchange. The defendant thereupon moved for a new trial, on the grounds that the rulings of the judge were erroneous, and also that the verdict was against the law and the evidence.

*B. Rand*, for the defendant.

1. The verdict is against the law and the evidence, for the facts show that the bills were taken in payment by the plaintiff, who agreed to rely solely on the acceptors, and indorsed

them for value received to a third person. Byles on Bills, (5th ed.) 291; *Carnidge* v. *Allenby*, 6 B. & C. 373, 381, 384; *Sibree* v. *Tripp*, 15 M. & W. 23; *Sard* v. *Rhodes*, 1 M. & W. 153; *Paige* v. *Stone*, 10 Met. 160, 169.

2. The circumstance, that the defendant lived in a country foreign to that in which the plaintiffs and acceptors of the bills lived, was of itself *primâ facie* evidence, that credit was given to the acceptors only, to the exoneration of the defendant. Story, Ag. §§ 268, 288, 290, 423; Smith, Merc. Law, (Am. ed. 1847,) 127, 145; Paley, Ag. (Lloyd's ed.) 248, 382; 1 Bell, Com. (4th ed.) 398; 3 Chit. Com. & Man. 203; 2 Liverm. Ag. 249; Bull. N. P. 130; *Thomson* v. *Davenport*, 9 B. & C. 78; *De Gaillon* v. *L'Aigle*, 1 B. & P. 357; *Paterson* v. *Gandasequi*, 15 East, 62; *Gonsalez* v. *Sladen*, cited in 3 B. & P. 489, 490; *Addison* v. *Gandassequi*, 4 Taunt. 575, 580; *Smyth* v. *Anderson*, 7 M. G. & S. 21; *Paige* v. *Stone*, 10 Met. 160, 169.

3. The instruction of the judge, that the plaintiffs after receiving the accepted drafts, having negotiated them in the usual course of their business for a valuable consideration, and having afterwards, as indorsers, on the acceptors' becoming insolvent before the maturity of the bill, taken them up, and having them now in their hands ready to be surrendered and filed in court, would not amount to a satisfaction and extinction of all claims of the plaintiffs upon the defendant on account of the sales of merchandise, was erroneous. Finlayson's Leading Cases on Pleading, (9th ed.) 123, and cases there referred to; Byles on Bills, (5th ed.) 291; *Carnidge* v. *Allenby*, 6 B. & C. 373; *S. C.* 9 D. & R. 391.

4. The allowance of exchange was erroneous. *Adams* v. *Cordis*, 8 Pick. 260.

*G. M. Browne*, for the plaintiffs.

1. The verdict was right on the facts proved. See *Tainter* v. *Prendergast*, 3 Hill, 72; *Thomson* v. *Davenport*, 9 B. & C. 78, 90; *Bishop* v. *Perkins*, 19 Conn. 300.

2. The fact, that the defendant lives in a country foreign to that in which the plaintiffs and the acceptors of the drafts live, is not *primâ facie* evidence that credit was given to the acceptors only, to the exoneration of the defendant. In England —

and the case must be governed by English law on this point —
the transfer of a bill either of the debtor or of a third person
does not discharge a debt, arising at the time or previously,
unless it is expressly agreed that the assignee shall run the risk
of the bill being paid.    Chit. Bills, (10th Am. Ed.) 175 – 179,
244 ; *Stedman* v. *Gooch,* 1 Esp. R. 3 ; *Drake* v. *Mitchell,* 3 East,
251 ; *Taylor* v. *Briggs,* 1 Mo. & Ma. 28 ; *Burden* v. *Halton,*
1 Mo. & P. 223 ; *Hadwen* v. *Mendisabal,* 2 Car. & P. 20 ; *Van-
cleef* v. *Therasson,* 3 Pick. 12 ; *Owenson* v. *Morse,* 7 T. R. 64 ;
Bayley on Bills, (2d Am. ed.) 395, 396 ; *Robinson* v. *Wilkin-
son,* 3 Price, 538 ; *Goodwin* v. *Coates,* 1 Mo. & R. 221 ; *Tucker*
v. *Maxwell,* 11 Mass. 143 ; *Robinson* v. *Read,* 9 B. & C. 449 ;
*Chipman* v. *Durant,* 10 Mass. (Rand's ed.) 51, note ; *Ex parte
Dixon,* cited in 6 T. R. 142.    Some of the elementary books
recognize a distinction in this respect between domestic and
foreign agents.    Story, Ag. § 268, note (1.)    But they all refer
to *Paterson* v. *Gandasequi,* 15 East, 62, which established no
such principle.    See *Seymour* v. *Pychlau,* 1 B. & Ald. 14, 17 ;
*Trueman* v. *Loder,* 11 Ad. & El. 589.    The most that is said
in any of the cases is, that it may be a question for the jury,
whether there is such a usage of trade.    Paley, Ag. (Lloyd's
ed.) 246 – 254 ; *Addison* v. *Gandassequi,* 4 Taunt. 575 ; *Thom-
son* v. *Davenport,* 9 B. & C. 78.    And see *Kirkpatrick* v. *Stainer,*
22 Wend. 244, 260.    Besides, in this case, the purchase was
not made through an agent, but was made, as the jury have
found, directly by the defendant.

3. The fact that the plaintiffs had indorsed and negotiated
the bills, the acceptors, Coates and company, having after-
wards, before the maturity of the bills, become insolvent, and
the plaintiffs having taken them up and having them in court,
does not amount to a satisfaction and extinction of the debt,
and will not prevent a recovery in this action.    *Burden* v.
*Halton,* 4 Bing. 454 ; *Hadwen* v. *Mendisabal,* 2 Car. & P. 20 ;
*S. C.* 10 Moore, 477 ; *Robinson* v. *Read,* 9 B. & C. 449 ; *Da-
vidson* v. *Bridgeport,* 8 Conn. 472, 477 ; *Mercer* v. *Cheese,* 4 M.
& G. 804 ; *Kearslake* v. *Morgan,* 5 T. R. 513 ; *Drake* v. *Mitchell,*
3 East, 251 ; *Brown* v. *Kewley,* 2 B. & P. 578 ; *Marston* v.
*Boynton,* 6 Met. 127

4. Exchange is to be allowed. Rev. Sts. *c.* 36, § 69; Brande's Encyc. Exchange; Encyc. Brittan. Exchange; Blake on the course of Exchange; Rees's Encyc. Exchange; Blunt, Comm. Dig. 293; Acts of Congress of 1799, *c.* 22, § 61, (1 U. S. St. at Large, 673); 1832, *c.* 227, § 16, (4 U. S. St. at Large, 593); 1842, *c.* 66, (5 U. S. St. at Large, 496); Story on Bills, §§ 30, 31, and notes; *Carter* v. *Cunningham,* 7 Met. 491, 494; Story, Confl. §§ 278, 279, 282, 283, 285, 286, 286 *a,* 308, 309, 310; *Blanchard* v. *Russell,* 13 Mass. 1, 15; *Smith* v. *Mead,* 3 Conn. 253; *Donn* v. *Lippman,* 5 Cl. & Fin. 1, 13, 19, 20; *Lee* v. *Wilcocks,* 5 S. &. R. 48; *Cash* v. *Kennion,* 11 Ves. 314; McCulloch, Comm. Dict. Exchange; *Scott* v. *Bevan,* 2 B. & Ad. 78; *Delegal* v. *Naylor,* 7 Bing. 460; *Adams* v. *Cordis,* 8 Pick. 260, 265; *Grant* v. *Healey,* 3 Sumn. 523; Story, Confl. §§ 271, 271 *a,* 284 *a,* 311; Rev. Sts. 33, § 1; *Russell* v. *Wiggin,* 2 Story, R. 213, 242.

The opinion was delivered at the March term, 1851.

FLETCHER, J. One of the grounds of the motion for a new trial is, that the verdict is against the evidence.

James Keen, who was a clerk and bookkeeper of Coates and company, and whose deposition the defendant put into the case, says, in his deposition, that according to the understanding of the parties, the acceptance was payment, and that it was so according to common usage, so far as his experience teaches him. He says, what knowledge he has of the understanding of the parties, beyond that derived from the correspondence, is derived from conversation with Coates himself. This witness further says, that he has no doubt, that in the letter inclosing the acceptance to the plaintiffs, it was stated, that they were in payment of the invoices. The conversation of Coates, as to the understanding of the parties, was clearly not evidence; so far as the understanding appeared in the correspondence, the letters themselves would be the best and most satisfactory evidence.

The degree of weight and credit, to be given to the statements of this witness, were matters wholly for the consideration of the jury; and it would be no ground for disturbing the verdict, considering the nature of the statements, that the jury did

not regard them as sufficient or satisfactory to establish the fact, that the acceptances were in payment for the goods. There was no evidence, that there was any understanding or agreement between the plaintiffs and the defendant, that the bills should be payment; on the contrary, the plaintiffs, in a letter to the defendant of November 3d, 1847, speak of the drafts, as on the defendant's account, and not in payment; and the defendant, by his letter of February, 1848, expressly admits his liability, and says he shall hold the plaintiffs harmless. There is therefore clearly no sufficient ground to disturb the verdict as against evidence.

It was further contended, for the defendant, that the circumstance, that the defendant lived in a country foreign to that in which the plaintiffs lived, and in which the commercial house was situated by whom the business (except ordering the goods and fixing the prices and time of payment) was done, and who undertook to pay for the goods, was *primâ facie* evidence that the credit was to be given to that house only, to the exoneration of Hopkins. But the court ruled, that the circumstance, that the defendant lived in a country foreign to that in which the plaintiffs lived, and that Coates and company who accepted the drafts also lived in England, was not *primâ facie* evidence that the credit was given to Coates and company only, to the exoneration of all liability on the part of Hopkins; nor would those facts, there being no special agreement and nothing beyond these circumstances, establish a defence to the claim of the plaintiffs.

It seems to be the law of England, as was maintained by the learned counsel for the defendant in this case, that where a British merchant, or agent, or factor, buys goods for a foreign house, in such case, the ordinary presumption is, that credit is given to the agent or factor; and not only that credit is given to the agent or factor, but that it is exclusively given to him, to the exoneration of his employer. Still, however, this presumption is liable to be rebutted by proofs, that credit was given to both principal and agent, or to the principal only.

The present case clearly does not come within the rule. The goods were not bought by the agent, but by the defendant

nimself. Keen, the defendant's witness, says, that his impression is, that Coates and company had nothing to do with ordering these goods. He says, " Sometimes Mr. Hopkins ordered his goods through us, and we transmitted the orders to the potteries." But in the case of the goods, which are the subject of this suit, they were purchased by the defendant wholly by himself. He sent his order directly to the plaintiffs, and the whole agreement of purchase, embracing the prices and terms of credit, was made by the defendant personally with the plaintiffs, without the intervention of any agent whatever. The plaintiffs sold the goods directly to the defendant; charged them in account directly to him ; made out the invoices in the defendant's name, as goods bought by him, and gave the credit to him ; the term of credit being agreed on by the plaintiffs and defendant themselves. Coates and company had nothing to do with buying the goods, and had no more connection with that transaction, than if they had simply given the defendant a letter of credit. Coates and company agreed to accept the plaintiffs' drafts, for the amount of the invoices of these goods, if purchased by the defendant, and this was all the connection which they had with the purchase of the goods.

While the court, therefore, assent to the positions of the learned counsel for the defendant, as to the law of England relating to the purchase of goods by an English agent for a foreign house, yet it seems quite clear to the court, that this is not such a case, and that the ruling at the trial was correct

It was further maintained for the defendant, at the trial, that the bills drawn by the plaintiffs on Coates and company, and by that house accepted, having been negotiated by the plaintiffs, in the usual course of business, for a valuable consideration, such negotiation amounted to a satisfaction and extinction of all claim of the plaintiffs, on account of the sales of merchandise to the defendant, and that the claim would not be again revived by the plaintiffs' taking up the bills afterwards in the manner they did.

Upon this point, the court ruled, that the fact, that the plaintiffs, after receiving the accepted drafts, negotiated them in

the usual course of business, and for a valuable consideration, the plaintiffs having indorsed them, and the acceptors, Coates and company, having become insolvent, upon their maturity, and the plaintiffs having thereafter taken them up, and having the same now in their hands ready to be surrendered and filed in court, did not amount to a satisfaction and extinction of all claim of the plaintiffs upon the defendant, on account of such sales of merchandise to the defendant.

The proposition on the part of the defendant is, that the negotiation of the acceptances of Coates and company by the plaintiffs, for a valuable consideration, was *ipso facto* a satisfaction of the original cause of action for the goods sold, and an entire extinguishment of all claim on the defendant, though Coates and company failed to pay the acceptances at maturity, and the plaintiffs were obliged to take them up, and did take them up, before the commencement of the suit, and had them in court at the trial ready to be surrendered.

In Finlayson's Leading Cases in Pleading, a book referred to by the learned counsel for the defendant, there are some remarks by the author, which are certainly pretty strongly in favor of this proposition. The author seems to suppose, that when bills are negotiated, as in this case, for a valuable consideration, the consideration thus received is payment of the original claim, for which the bills were given; so that though the party who then negotiates the bills is obliged himself to take them up, and ultimately realizes nothing from the bills, which remain wholly unpaid, yet he can have no claim on the original cause of action. But these views, thus expressed by this author, are by no means supported by the cases and authorities to which he refers. On the contrary, it is clearly and fully settled, both by the English and American authorities, that the negotiation of bills for a valuable consideration, as in this case, does not prevent a party from resorting to the original cause of action, **if** the bills are not paid, and nothing is in fact received from them.

The question, and the only material question, is, not whether the bill has been negotiated for value, but whether it is still outstanding, so that the parties are liable upon it, not-

withstanding a recovery upon the original claim. If the bill is still outstanding, so that the parties are liable, then a recovery cannot be had on the original account; but if the bill has been taken up and is produced to be cancelled, as in this case, then the party may recover on the account. The ruling of the judge therefore on this point was correct.

The defendant also takes exception to the allowance of exchange. This case is clearly within the decision of *Adams* v. *Cordis*, 8 Pick. 260, by which the question as to exchange must be governed, and the current rate of exchange therefore cannot be allowed.