# Lamborn et al. *v.* Allen Kirkpatrick & Co., Inc., Appellant.

*Sales—Payment—Letter of credit—Security—Certified check—Actions—Parties.*

1. Where a person accepts a certified check as payment, his only recourse is against the bank; but where a buyer arranges credit at a bank in favor of a seller, established by a letter of credit, the letter of credit is merely a security, and the seller may sue the buyer directly on the contract of sale.

*Sales—Defenses—Affidavit of defense—Practice, C. P.—Trial—Ground of refusal to carry out contract—Changing ground.*

2. Defenses not raised in the affidavit of defense cannot be interposed at the trial.

3. Where a party has stated one ground for his refusal to carry out a contract, he cannot, after action brought, take another position.

*Sales—Refusal to accept the goods—Resale—Diligence as to resale—Practice, C. P.—Trial—Evidence—Burden of proof—Charge of court.*

4. In an action for the price of goods which defendant refused to accept and which plaintiff resold, where there is in fact no evidence that plaintiff did not use due diligence in making the resale, and the trial judge states that he does not recollect any such testimony, defendant cannot maintain that such statement by the judge placed the burden on defendant of showing lack of due diligence by plaintiff, or took away from the jury the consideration of the fulfillment of plaintiff's obligation in making the resale; and especially is this so where there was affirmative proof of plaintiff's diligence, and the court properly instructed the jury as to what was required of plaintiff in making the resale.

*Sales—Contract—Sugar—Naming of steamer—Condition precedent—Waiver.*

5. Where a contract for the purchase of sugar provides for shipment from British India with privilege to the shippers of transshipping at the United Kingdom by steamer or steamers for New York, "names of such steamer or steamers to be declared later," the purchaser cannot claim a breach of contract because the steamer for British India was not named, where it appears that the voyage was continuous from British India to New York.

6. In such case, as the time for the declaration was indefinite, the buyer sufficiently complied with the contract if the steamer was named when the seller presented the draft with bill of lading attached at the bank, where the buyer had arranged for the payment.

7. The buyer cannot complain of his losing the advantage of resale of the sugar in transit, by not knowing the name of the steamer, where the evidence shows that he entered into a contract with time for the declaration of the name of the steamer indefinite, with the question of what steamer was to be declared in doubt, and with the remedy for the lack of certainty in the contract in his own hands by a demand on the seller for a declaration of the steamer at any time.

Argued October 6, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 102, March T., 1926, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1923, No. 391, on verdict for plaintiffs, in case of Arthur H. Lamborn et al. v. Allen Kirkpatrick & Co., Inc. Affirmed.

Assumpsit for breach of contract. Before SWEARIN-GEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $9,004.11. Defendant appealed.

*Error assigned* was, inter alia, refusal of judgment for defendant n. o. v., quoting record.

*Geo. B. Berger,* of *Calvert, Thompson & Berger,* with him *George H. Calvert* and *Harbaugh Miller,* for appellant.—Having failed to declare the steamer, plaintiffs cannot recover: Reuter v. Sala, 48 L. J., C. P., N. S. 492; Busk v. Spence, 4 Camp. (Eng.) 329; Borrowman, Phillips & Co. v. Free & Hollis, 4 Q. B. D. 500; Steinhards v. Bingham, 182 N. Y. 326; Gilkes v. Leonino, 4 C. B., N. S. 485.

The letter of credit constituted payment: Born v. Bank, 123 Ind. 78; Anderson v. Gill, 79 Md. 312; Mc-Fadden v. Follrath, 114 Minn. 85; Jersey City First Nat. Bank v. Leach, 52 N. Y. 350.

The place of delivery under the contract was New York: Hoffman v. Goslin, 172 Fed. 113; Sparta Produce Exch. v. Wilson & Co., 223 Ill. App. 126; Standard Casing Co. v. Casing Co., 233 N. Y. 413.

*Maynard Teall,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellees.—The provision for declaring the ship was for the sellers' benefit exclusively; but, even assuming the contrary, the provision was fully complied with: Harrison v. Fortlage, 161 U. S. 58; Wilbur & Sons v. Lamborn, 276 Pa. 479; Smith Tea & Coffee Co. v. Lamborn, 276 Fed. 325.

The lapse of time in effecting resale was fully explained by the evidence and does not affect plaintiffs' right to recover or the amount of damages: Small Co. v. Refining Co., 267 U. S. 233; Frederick v. Refining Co., 281 Fed. 305.

There is no support for defendant's argument that New York was the delivery point.

The sellers were not limited to suit on the letter of credit: Bell v. Moss, 5 Wharton 189.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1927:

The verdict and judgment in this case represent the damages which a jury assessed against defendant for breach of a contract to purchase and pay for sugar sold to it by plaintiffs, who were brokers in that and other commodities.

The contract was in writing and the parts of it which are here of concern recite that plaintiffs, on April 29, 1920, sold to appellant "300 bags (of about 224 lbs. each) five per cent more or less Java white sugars at $21.51 per 100 pounds duty paid, net exdock, New York, plus 1½%, for handling charges. Shipment to be made

during May-June, 1920, at option of the sellers from British India—Sellers have privilege of transshipping sugars at the United Kingdom by steamer or steamers to New York. Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract. In case of damage to the sugars on steamer in transit to New York preventing seller from making full delivery, sellers will deliver under this contract to each of the purchasers of the sugars aboard said steamer a proportionate part of the sound packages. Payment to be made by net cash on presentation of sight draft, with invoice, and bill of lading attached in New York. Buyers to open within five (5) days confirmed irrevocable letter of credit in favor of Lamborn & Company, New York City, for the full invoice value of 315 bags with National City Bank, New York City, and bankers to confirm same to Lamborn & Company, New York City."

Plaintiffs shipped the sugar from Calcutta in British India in June aboard the steamer "Romeo" bound for New York. The sugar was not transshipped but was transported to New York on that vessel. On arrival it was ascertained that some of the sugar was damaged and plaintiffs could tender to defendant only 256 bags thereof. The vessel reached New York about September 3d, and, on September 21st, plaintiffs presented to the National City Bank, with which defendant in accordance with the terms of the contract had arranged an irrevocable letter of credit, a draft for the amount of the purchase price of the sugar. The bank, acting under instructions from defendant, refused to pay the draft. On September 22d, Lamborn & Company notified defendant that they were shipping 256 bags of sugar to it at Pittsburgh. Upon receipt of this notification, defendant declined to receive the sugar on the ground that Lamborn & Company had failed to declare the steamer

in accordance with the provisions of the contract. There-
after on October 18th plaintiffs notified defendant that
they would sell the sugar for the latter's account, which
they proceeded to do as soon as they could get a market
for it, so the testimony shows, disposing of it in Decem-
ber at prices ranging from 6½ to 7 cents a pound and at
a loss aggregating something in excess of $8,000.

Appellant sums up its complaints against the result
reached in the court below by stating to us four ques-
tions: (1) Does plaintiffs' failure to declare the steamer
bar their right to recover?    (2) Having accepted a let-
ter of credit as payment, can plaintiffs have recourse
against appellant?    (3) Was not New York rather than
Pittsburgh the place of delivery contemplated by the
contract?    (4) Did the court properly instruct the jury
on the question of plaintiffs' due diligence in reselling
the sugar?

Appellant's second question, whether plaintiffs are
not limited in remedy to a suit against the bank on the
letter of credit, while raised in the affidavit of defense
does not seem to have been pressed on the trial or on
the motion for a new trial.    Appellant points us to no
authority involving the precise situation with which it
confronts us—the establishing of an irrevocable credit
by the buyer.    It does call to our attention cases, from
other states, where it has been held that if the payee
procures    the certification of a check his remedy is
against the bank.    It was not necessary to go afield for
authority on this proposition as our own case of Bulliet,
Trustee, v. Allegheny Trust Co., 284 Pa. 561, is directly
in point.    The rule, however, has no applicability to this
controversy.    We are considering not a check certified at
the request of the holder but a credit established by a
debtor in favor of his creditor.    The two situations bear
no analogy to each other.    Moreover, in Bell v. Moss, 5
Wharton 189, it was determined, Chief Justice GIBSON
writing the opinion, that "A credit with a banker is
not payment but a means of payment, more or less secure

according to the solidity of the depositary; and the greater or less certainty of the security cannot affect the question of its character; it is but a security still......and no principle is surer than that a creditor may press all his securities at the same time." We conclude that plaintiffs were not limited in remedy to an action against the bank on the letter of credit.

The third question submitted for our consideration is whether New York and not Pittsburgh was the place of delivery. It was not set up in the affidavit of defense that New York was the place of delivery. Defenses not raised in the affidavit of defense cannot be interposed on trial: Practice Act of May 14, 1915, P. L. 483, section 16; McDonald Construction Co. v. Gill, 285 Pa. 305; Dietrich v. Davies, 274 Pa. 213. After all of plaintiffs' case had been heard in the court below and they had rested, defendant endeavored to raise this question by an amendment to its affidavit of defense. The court properly declined to permit the amendment. Where a party has stated one ground for his refusal to carry out a contract he cannot after action brought "mend his hold" and take another position: Bulliet, Trustee, v. Allegheny Trust Co., 284 Pa. 561; Honesdale Ice Co. v. Lake Lodore Improvement Co., 232 Pa. 293; Ohio, etc., Ry. Co. v. McCarthy, 96 U. S. 258; Second Nat. Bank v. Lash Corp., 299 Fed. 371. Appellant's third question drops from consideration.

The fourth question whether the court properly instructed the jury on the subject of plaintiffs' due diligence in reselling the sugar must be affirmatively answered. Appellant argues that the plaintiffs' diligence in effecting the resales was not submitted to the jury, that in effect the court gave binding instructions for appellees on this branch of the case. It is true the trial judge said that he had no recollection of any testimony tending to show that plaintiffs did not use ordinarily reasonable care and judgment in making the resale. There was no such testimony. In addition to this state-

ment, the court told the jury the obligation was on plaintiffs "to use their best judgment as to the time and place [of sale]. If you find that the plaintiffs did use their best judgment and did not delay unnecessarily the time when the sale was made, then the plaintiffs would be entitled to a verdict." The trial judge affirmed defendant's point: "The plaintiff having elected to resell was bound not only to exercise good faith, but further to exercise reasonable care and judgment in making the resale." There was a satisfactory explanation in the testimony for the delay in making the resale in the proof of negotiations carried on between the parties after the sugar reached Pittsburgh and in the inability to find ready purchasers owing to the glut in the sugar market. Because the trial judge said he had no recollection of any testimony that plaintiffs did not use reasonable care and judgment in making the resale does not, as appellant argues, place the burden on it of showing lack of diligence, or take away from the jury the consideration of the fulfillment of plaintiffs' obligation in making the resale. There was in plaintiffs' evidence satisfying proof of its good faith and diligence in making the resale and all that the court said was that appellant had not countervailed it. "The real question was not whether the plaintiff got the best possible price.....but whether the resale was fairly made in a reasonably diligent effort to obtain a good price": A. B. Small Co. v. American Sugar Refining Co., 267 U. S. 233, 246; A. B. Small Co. v. Lamborn, 267 U. S. 248, 253; Smith, deMacedo & Co. v. Swift & Co., 267 Pa. 365.

This brings us to the remaining question propounded by appellant, which is the bulwark behind which it made its real stand in the court below and here. Was plaintiffs' failure to declare the steamer a bar to their recovery? Appellant insists that the contract provides for a declaration of the steamer not later than arrival at the port of destination and that the declaration was a condition precedent to plaintiffs' recovery. The po-

sition of appellee is that the declaration of the ship was for the seller's benefit exclusively and that if the contrary be assumed the provision of the contract was complied with. We had the question concerning the nature of a provision regarding a declaration of the ship before us in Wilbur & Sons v. Lamborn, 276 Pa. 479, but concluded that it was unnecessary, in disposing of that appeal, to decide whether such a clause constituted a condition precedent to the seller's recovery. Again we think it not essential to decide the question under the facts of this case and the terms of the contract between the parties. The language of the contract is: "Shipment to be made during May-June, 1920, at option of the sellers from British India—Sellers have privilege of transshipping sugars at the United Kingdom by steamer or steamers to New York. Names of such steamer or steamers to be declared later. Should steamer or steamers declared against this contract fail to arrive at port of destination for any cause, sellers are relieved of responsibility under this contract." What steamer was to be declared? Appellant says the one carrying the sugar from British India but the contract does not so stipulate, at least with certainty. It speaks of the privilege of the sellers of transshipping the sugars at the United Kingdom "by steamer or steamers to New York," and then "Names of *such* steamer or steamers to be declared later." The sugar was not transshipped but was carried by continuous voyage. The contract strictly read contains no provision as to a declaration of the vessel in that event. Even if the conclusion should be, however, that any steamer carrying the sugars was to be declared the contract left the time of its declaration most indefinite, as we pointed out in Wilbur & Sons v. Lamborn, 276 Pa. 479, apropos of the same provision. It was to be declared "later." When would this be? Appellant says not later than arrival at the port of destination, but we find no language in the contract or circumstance in the case warranting this assumption. Its counsel

argues that as the provision for the declaration of the steamer is followed by one providing that if the steamer declared fails to arrive at port of destination the sellers are relieved from responsibility under the contract, that this fixed the time of declaration before arrival or not later than arrival. This by no means follows as there is no apparent relation between the two clauses in the contract and nothing by way of explanation on the record to show that they should be construed together.

But it cannot be said that plaintiffs never made any declaration of the vessel. When, on September 21st, in accordance with the contract they presented their draft for payment to the National City Bank, with which appellant had arranged the credit to meet plaintiffs' call for the purchase price of the sugar, the papers accompanying the draft showed that the sugar had been shipped on the steamer Romeo. Incidentally it is significant, in view of appellant's argument that the declaration of the steamer was a condition precedent to plaintiffs' right to payment, that the documentary letter of credit, for which the buyers arranged and which contained a number of conditions with which the sellers were compelled to comply before becoming entitled to receive payment, contains no requirement that the presenter of the drafts must show that the vessel had been declared. The letter of credit was opened within five days after the contract was made, long before the shipment; it seems almost inconceivable that a condition precedent to payment would have received no mention therein.

Appellant's allegation of prejudice to its rights by the failure to declare the steamer either prior to or at least not later than arrival in New York is that, had the vessel been declared, it could have sold the sugar in transit, which without knowing the name of the vessel it could not do. While it is true one of the advantages to a buyer in having the transporting ship declared is that

thereby he is enabled to resell the goods or assign his contract more advantageously than would otherwise be possible (2 Williston on Sales, 2d ed., p. 1220) we fail to see how appellant can complain of such loss of advantage in this case, because it entered into the contract with the time for the declaration indefinite, with the question of what steamer was to be declared in doubt and with the remedy for the lack of certainty in the contract in its own hands by a demand on plaintiffs for a declaration of the steamer at any time. No such demand was made. Another circumstance of significance is that the letter of credit was to run until October 31, 1920, so that it appears that defendant had arranged payment for the sugar if it arrived by that date and it knew by the presentation of the draft almost six weeks prior to that time that the sugar had arrived and the name of the vessel which transported it.

The outstanding fact on the record is that appellant by its contract in writing had bought the sugar and had done the next thing to paying for it in advance by arranging an irrevocable credit to meet the purchase price. Under the contract it entered into it cannot escape payment without showing more by way of justification for its repudiation than the record before us discloses.

The judgment is affirmed.