THE BANK OF UNITED STATES, Plaintiff, *v.* I. MOSES SELTZER, an Individual Doing Business and Trading under the Firm Name and Style of M. SELTZER SILK COMPANY, Defendant.

First Department, July 6, 1931.

*Walter Bishop* of counsel [*Julius L. Neidle* and *Warren C. Fielding* with him on the brief; *Carl J. Austrian*, attorney], for the plaintiff.

*Daniel E. Hanlon* of counsel [*Eugene T. McQuade* with him on the brief; *Lewis, Garvin & Kelsey*, attorneys], for the defendant.

*R. D. Murray* of counsel [*Murray, Hollaman & Lockwood*, attorneys], for Yokohama Specie Bank, Ltd., *amicus curiœ*.

*J. Adam Murphy* of counsel [*Winslow Lovejoy* with him on the brief; *White & Case*, attorneys], for Shawmut Corporation of Boston, *amicus curiœ*.

*Robert M. McCulloch* and *T. F. Davies Haines* of counsel [*Appleton, Rice & Perrin*, attorneys], for Barclays Bank (Dominion, Colonial and Over-seas), *amicus curiœ*.

MARTIN, J.  The defendant, a merchant in New York, entered into a contract with Tokizawa Shoten, a Japanese corporation, for the purchase of raw silk. The contract was in writing and provided for the establishment of a ninety-day letter of credit. The defendant applied to the plaintiff for the issuance of such a credit in favor of Tokizawa Shoten of Yokohama, Japan, under which drafts at ninety days' sight were to be drawn by Tokizawa Shoten on the plaintiff, accompanied by documents representing the silk to be purchased.

The plaintiff, The Bank of United States, agreed to issue the letter of credit. Thereupon the defendant signed a letter of credit agreement which was printed on the back of a copy of the letter of credit issued by the plaintiff in favor of Tokizawa Shoten. The two papers make the contract between the plaintiff and the defendant upon which this action is based. This contract states that the defendant agrees to the terms of the letter of credit, and that he promises to provide in New York one day prior to the maturity of the bills drawn thereunder sufficient funds in cash to meet the payment of the same, together with interest, commissions and expenses, the bills of lading, covering the silk, to be drawn to the order of the plaintiff, title thereto and to the silk to remain in the plaintiff until payment of all of the bills drawn under the credit. There is also a provision as to plaintiff's retention of title until all

other obligations of the defendant to it have been met, but this provision is of no importance since there were no other obligations.

The letter of credit was issued by the plaintiff and delivered to and accepted by Tokizawa Shoten at Yokohama. Under it Tokizawa Shoten drew its ninety-day draft on the plaintiff for $8,439.25 against twenty-five bales of raw silk. The draft, bills of lading and other documents attached thereto in all respects complied with the provisions of the letter of credit. The draft and the documents were then delivered to the Bank of Taiwan, Ltd., at Yokohama which paid value for it to Tokizawa Shoten. The Bank of Taiwan sent the draft to New York, where its New York agency presented the draft and the documents to the plaintiff for acceptance. This was done on the 2d of December, 1930. The plaintiff accepted the draft and the documents were thereupon delivered to it by the Bank of Taiwan, and on that day the plaintiff delivered the documents to the defendant who gave a receipt, promising the delivery of a trust receipt, which was subsequently given on December 22, 1930.

On December 11, 1930, the Superintendent of Banks took possession of the plaintiff, closed its doors and suspended its business. The draft became due and payable on the 2d of March, 1931, and upon presentation payment was refused on the ground that the plaintiff was in the hands of the Superintendent of Banks and was not open for business. It was thereupon duly protested for nonpayment. By the trust receipt, defendant acknowledged the receipt of the silk and agreed to deliver the proceeds thereof to the plaintiff " to apply against its acceptance on account of the undersigned and under the terms of the letter of credit," and agreed to hold the silk and its proceeds " in trust for the payment of said acceptance and of any other indebtedness." As has been noted, the reference to other indebtedness is immaterial, since it did not exist.

On the 28th day of February, 1931, which was more than the one day prior to the due date of said draft required by the agreement, the defendant offered to pay to the plaintiff the amount thereof, together with interest, expenses and commissions, on condition that the plaintiff pay said draft to the holder or else that it hold said sum so offered for the specific purpose of paying the same to the holder at maturity. The defendant also offered to pay the face of said draft to the holder and to pay the plaintiff its expenses, interest and commissions on condition the plaintiff release the defendant from any obligation under the letter of credit agreement and return to the defendant the trust receipt. The plaintiff refused this offer. The plaintiff did inform the defendant that it was willing to hold the moneys so offered and the merchandise, if

returned, and the proceeds thereof, if paid, in trust pending a judicial determination of " the right of the plaintiff to appropriate the same as general assets " and a determination of the rights of the plaintiff, of the holder (Bank of Taiwan), of the shipper (Tokizawa Shoten) and of the defendant with respect to said moneys, merchandise and proceeds.

Thereafter Tokizawa Shoten demanded that *the defendant* pay to it the purchase price of said silk.

On March 4, 1931, defendant made his declaration of intention to pay said draft for honor *supra* protest (Neg. Inst. Law, art. 16), and did pay the same together with interest and protest fees to the Bank of Taiwan, and on the same day duly advised plaintiff of this fact by letter.

The plaintiff claims that it is entitled to recover from the defendant the face of said draft, together with its commissions and expenses and interest, and that the defendant, as the holder of said draft for honor, is a general creditor, and also that the defendant is not entitled to offset the defendant's obligation as acceptor of said draft against the claim made by plaintiff under the agreement.

The defendant claims that, upon these facts, it is entitled to judgment dismissing the complaint on the ground that the plaintiff has no cause of action against the defendant, and that in any event the defendant is entitled to an offset or counterclaim equal to the plaintiff's demand.

While the above facts present many interesting questions of law as to the respective rights of the various parties to the transactions described, as to this plaintiff and the defendant it is submitted that there is but one question involved, *i. e.,* whether the agreement is based upon any present consideration and is now enforcible at law or in equity by the plaintiff against the defendant, or in other words, whether a bank which has defaulted on its commercial credit has any cause of action against its customer, at whose request the credit was opened.

The bank entered into a contract not only to accept the draft, but to honor it when presented; in other words, to finance the transaction providing the defendant did certain things. Before payment by defendant, it became apparent that the bank would be unable to fulfill its obligation and that there would be a breach of contract on its part; in fact the defendant offered to pay the amount of the draft to the bank if it would apply it for that purpose, or if it would hold it in trust for the specific purpose of paying the draft in question. The bank refused to do so. It contended that it had a right to accept the defendant's money and place it with its other assets, but refused to pay the draft so that the defend-

ant could obtain the goods. The defendant argues that plaintiff should not be permitted to recover on a contract which it did not and could not perform, and where there was a failure of consideration.

The buyer of the goods should be permitted to protect himself by paying the draft which the bank refused to pay and to receive the goods, a failure to accept which would make him liable for damages for a breach of contract.

The draft in this case is not in the possession of a third party. It was paid by the defendant and is in his possession.

We believe the grounds urged by the plaintiff are highly technical and not substantial. Governed by the rules which determine the principles of contract law, the plaintiff may not recover. There is no difference between a commercial contract of this character and other contracts.

In *Moss* v. *Old Colony Trust Co.* (246 Mass. 139, 151) Chief Judge RUGG said: " A letter of credit is a well known instrumentality of commerce. No particular form is prescribed for it. It is a contract in writing. It is governed by the same general principles of law as are all other contracts in writing."

There is authority supporting the position which the defendant has taken in this case. In a well-considered case in the Court of Appeals (*Leslie* v. *Bassett*, 129 N. Y. 523) the court said: " There was, undoubtedly, a good consideration for the draft in question when it was drawn. But if the consideration has failed, the Exchange could not enforce the draft, nor can the plaintiff, who has succeeded to its rights, and stands in its shoes. The draft was transferred by the Exchange to the plaintiff on the 9th or 10th of April, 1888, within one or two days after its date. On the 12th of April, the Exchange was declared insolvent and a receiver was appointed. The evidence tends to show that it is hopelessly bankrupt. Its debts are unpaid. * * * Bassett & Co., as has been said, are still liable to Alcock & Co. for the price of the goods, and if liable on the draft in suit will be compelled to pay for the goods twice over, leaving them as their only resource a worthless claim against a bankrupt concern.

" Under the circumstances disclosed by the evidence we are of opinion that neither the Exchange nor its successor could maintain an action on the draft, and that the plaintiff as transferee is in no better position. We deem it unnecessary to consider whether the transfer of the draft to apply upon an antecedent debt of the plaintiff against the Exchange was a wrongful diversion of the draft from the purpose for which it was to be used. It is sufficient that the consideration has failed and this constitutes a good defense to the action."

In *Bassett* v. *Leslie* (123 N. Y. 396) the same facts were before the Court of Appeals in an action of interpleader. Bassett, the plaintiff, alleged that he had been sued by Leslie on the acceptance and by Alcock for the price of the goods. Plaintiff asked for leave to pay the money into court and interplead Alcock and Leslie. A demurrer to the complaint was sustained below and affirmed by the Court of Appeals on the ground that Alcock and Leslie were not suing for the same fund, Leslie's action being on the acceptance and Alcock's being for the price of the goods.

In that case, Judge EARL, writing for the court, said as to the liability on the Bassett draft: " That draft was drawn by the American Exchange upon the plaintiffs for the purpose of placing it in funds to meet the draft drawn upon it by Alcock & Co., and while it neglected and refused to pay the draft accepted by it, it had no cause of action against the plaintiffs upon the draft accepted by them. * * *

" If Mrs. Leslie claims precisely what is alleged in the complaint her claim is good for nothing, and she cannot recover upon the draft against these plaintiffs. If, however, as may be inferred, she in fact claims that she is a *bona fide* holder of the draft for value, then she can recover thereon against the plaintiffs, and if they should be compelled to pay her the amount of the draft they would still be liable to pay Alcock & Co. the price of the goods."

It is not often that a set of facts so entirely similar to those of a case before the court are found in an adjudicated case. In the *Bassett Case* (*supra*) the bank had breached its contract and the court held that neither it nor its assignee could recover against the buyer under the breached contract. In this case the plaintiff has also breached the contract which it seeks to enforce against the buyer, the defendant herein.

The Court of Appeals held on both appeals in the *Bassett Case* (*supra*) that a bank cannot enforce a contract which it has itself breached; and, unless we are to disregard these decisions, they are decisive of the present controversy.

A somewhat similar state of facts was before this court in *Sexton* v. *Fensterer* (154 App. Div. 542; affd., 213 N. Y. 641). Presiding Justice INGRAHAM sums up his conclusions as follows: " It follows, therefore, that upon no aspect was there any obligation ever existing in favor of Kessler & Co. or its assignee in bankruptcy against the defendant, and the court was quite right in directing a verdict for the defendants."

The difficulty with plaintiff's position in this case is that it overlooks the fact that the Bank of United States was not only to

accept this draft, but was to finance this transaction or honor the draft when presented.

Under the rules laid down in the cases governing this subject, the defendant remained liable on the sales contract until he paid the draft. In making the payment he proceeded under the Negotiable Instruments Law as the person for whose account it was drawn, and he became the holder thereof, with all the rights of the negotiator to whom he paid it. In any event, therefore, he would have a claim against the plaintiff for the full amount of the draft and would have a right to offset the demand now made upon him by the plaintiff.

In the view we take of this case, however, it is unnecessary for him to take that position. The consideration expressed in the letter of credit agreement for defendant's promise thereunder was the issuance to Tokizawa Shoten of a letter of credit, or promise on the part of plaintiff to accept any draft against it up to $8,500, and to honor any such draft in the hands of any *bona fide* holder. That promise was and remains a term of the letter of credit agreement. The issuance of such letter of credit was obviously not a payment of defendant's debt to Tokizawa Shoten, but merely provided means by which the latter could obtain payment if plaintiff performed its obligation thereunder, which it undertook by virtue of the letter of credit agreement.

The promise on the part of defendant in the letter of credit agreement, upon which plaintiff issued its letter of credit to Tokizawa Shoten, was that on the last business day before any draft accepted under such letter of credit became due defendant would place plaintiff in funds with which to meet such draft. In performance of that agreement, defendant offered the funds to plaintiff on condition that plaintiff honor the draft as agreed, in the hands of the holder thereof. Plaintiff's refusal of this offer, accompanied by its dishonor of the draft on the next business day, constituted a failure of consideration for defendant's promise in the letter of credit agreement, which discharged defendant of its promise and entitled him to demand of plaintiff the return of the trust receipt which he had given plaintiff, as agreed, as security for plaintiff's obligation to honor the draft.

The rules relating to outstanding drafts in the hands of *bona fide* holders under letters of credit issued by a bank which has subsequently become insolvent, do not apply, because this controversy is not between the negotiator of the draft and the bank, but between the parties to the letter of credit agreement. Insolvency of the bank did not affect its liability to defendant for a breach of that agreement or for failure of consideration thereunder. The bank

having failed to perform the contract and having breached its contract, there was a failure of consideration, as clearly pointed out in *Leslie* v. *Bassett* (*supra*).

The defendant, therefore, is entitled to judgment dismissing plaintiff's claim on the ground that there is no cause of action against the defendant, but, as stipulated, without costs.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment directed for defendant dismissing plaintiff's claim, without costs. Settle order on notice.