### GREENOUGH v. MUNROE et al.

OLIVIER STRAW GOODS CORPORATION v. IRVING TRUST CO. et al. (CHARTERED BANK OF INDIA, AUSTRALIA & CHINA, Intervener).

No. 408.

Circuit Court of Appeals, Second Circuit.

Aug. 25, 1931.

Zalkin & Cohen, of New York City (Nathan Coplan, Max J. Wolff, and Israel Akselrod, all of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (John W. Crandall and Morris Douw Ferris, both of New York City, of counsel), for appellee Olivier Straw Goods Corporation.

Selden Bacon, of New York City, for appellee Chartered Bank of India, Australia, & China.

Wise, Shepard & Houghton and Rounds, Dillingham, Mead & Neagle, all of New York City (Eugene Congleton and G. Baker Schroeder, both of New York City, of counsel), for H. Galland & Cie. and F. Schumacher & Co., amici curiæ.

Merrill, Rogers, Gifford & Woody, of New York City (Wilson B. Brice, Forrest M. Anderson, and Herbert P. Carter, all of New York City, of counsel), for Societe Generale, amicus curiæ.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The defendants were a firm of private bankers doing business in the city of New York under the name of John Munroe & Co. At the request of Olivier Straw Goods Corporation (hereafter referred to as Olivier),

John Munroe & Co. issued five irrevocable letters of credit in favor of five merchants in the Orient, from whom Olivier wished to purchase goods. In consideration thereof, Olivier agreed with the Munroe firm to pay a sufficient amount "to cover all drafts drawn under said credits together with commissions and interest and expenses where chargeable," and that title to the property purchased, and the proceeds thereof, should be in the Munroe firm until all drafts under the letters of credit and all other indebtedness of Olivier to the firm should be paid. So far as appears, there is no other indebtedness of Olivier to John Munroe & Co., so that this last provision is of no significance in the present suit. Thereafter Olivier contracted with the respective merchants for the purchase of goods, and the sellers drew four months' drafts upon the Munroe firm under the letters of credit. The drafts, accompanied by proper shipping documents, were discounted by Oriental banks, sent forward to the Munroe firm for acceptance, and accepted; but before maturity of the drafts a receiver of the Munroe firm was appointed in the above-entitled suit. Some of the drafts matured and were not paid, and it was apparent that the others would be dishonored at maturity. In the meantime the purchased merchandise had arrived, and was delivered to Olivier upon trust receipts given by the latter to the Munroe firm, or, in one instance, to its receiver, under a stipulation precluding the waiver thereby of any rights. The trust receipt provided that Olivier would hold the merchandise covered by it as the property of the Munroe firm until the acceptance of the draft given as the purchase money of said merchandise under the specified letter of credit shall have been paid the Munroe firm, with liberty, however, to sell, all proceeds of sales "to apply (when paid) against the acceptance."

The receiver having demanded that Olivier account for the goods or their proceeds held under the trust receipts, and the sellers demanding or threatening to demand payment from Olivier of the purchase price of the merchandise upon nonpayment of the drafts at maturity, Olivier filed its petition asking leave to redeem its trust receipts by exhibiting to the receiver proof of its payment of the drafts accepted by John Munroe & Co., or, in the alternative, that the moneys to be paid to the receiver under the trust receipts be impressed with a trust for payment of the respective drafts. Pending the hearing on the petition, Chartered Bank of India, Australia, and China, which held four of the drafts accepted by the Munroe firm, was allowed to intervene. It asked for relief substantially identical with Olivier's alternative prayer. A decree was entered directing Olivier to pay the receiver the amounts due on the drafts, plus commissions and charges, and directing the receiver to pay over such amounts to the holders of the relative drafts in pursuance of the trust which the court impressed upon the moneys for the benefit of the draft holders. This is the decree appealed from. Several holders of the drafts have been allowed to file briefs as amici curiæ.

It is the contention of the receiver that John Munroe & Co., although paying nothing, or only a dividend, to the holders of its drafts, can collect from Olivier, by virtue of Olivier's agreement to furnish funds to "cover" the drafts and under the provisions of the trust receipt, the face value of the accepted drafts, and can hold the sums so collected as general assets. The argument is that the importation of goods under an irrevocable letter of credit results in three distinct and independent contracts, which, in the case at bar, were the following: (a) The contract between Olivier and the exporter by which the latter agreed to sell goods and take as payment for them a draft drawn upon and accepted by John Munroe & Co. under the letter of credit; (b) the contract between Olivier and the Munroe firm by which Olivier agreed to pay the firm the face amount of its accepted draft (plus commissions) on or before the maturity thereof, and to permit title to the imported merchandise to remain in the Munroe firm until payment of such sum to them; and (c) the contract between the exporter and the Munro firm evidenced by the letter of credit and the accepted draft, by which the exporter, or the holder of the draft, gets nothing but a right of action upon the negotiable instrument. From these premises the court is urged to reach the conclusion that neither principles of subrogation nor any other equitable principle can justify impressing a trust in favor of the draft holders upon the sums due from Olivier to the receiver.

The appellees, on the other hand, not only deny that the contract relations, as analyzed by the appellant, are independent of each other, but challenge the premise that the exporter took the draft in absolute rather than conditional payment for his merchandise. If Olivier remains liable to the seller for the price of the merchandise, provided the draft is not paid, the receiver would not dispute,

we understand, the correctness of the decree. Therefore we shall first consider whether the drafts were taken in absolute payment.

As to the underlying principle, there is complete accord. It is a question of the intention of the parties. Finkelstein, Letters of Credit, 155; Williston, Contracts, § 1922; Alcock v. Hopkins, 60 Mass. (6 Cush.) 484. But in the present case, as in the usual case, the parties made no specific reference to the matter in their contracts, which did not even specify the name of the banker who should open the letter of credit. The confirmations of sales by Christern Huenefeld & Co. stated, "Terms of Payment: Letter of Credit to be established in favor of Christern Huenefeld & Co.;" and in the Hattori Shoten transaction, the confirmation read, "Payment: Draft at 4 m/s under letter of credit." In the memoranda evidencing purchases from the three other exporters the word "payment" was not used. That word may be of some evidentiary significance, though it is very slight, standing alone; and, if the burden of proof is upon the party asserting that the instrument was taken as payment, that burden is not sustained here. Hence we must consider whether there is any general presumption or inference of fact to be drawn merely from the use of the letter of credit device.

■ The receiver relies upon the rule that, where a note or other negotiable instrument of a stranger is taken at the time of the creation of a debt, there is a presumption that it is taken in absolute payment and not merely in conditional payment. Such a rule is stated in Williston, Contracts, § 1922; Anson on Contracts (Corbin's Ed.) p. 494; N. Y. & Cuba Mail S. S. Co. v. Texas Co., 282 F. 221, 223 (C. C. A. 2); Atlas S. S. Co. v. Columbian Land Co., 102 F. 358, 360 (C. C. A. 2); Hall v. Stevens, 116 N. Y. 201, 207, 22 N. E. 374, 5 L. R. A. 802. But the cases announcing this rule of presumption seem to have involved situations where the facts can fairly be interpreted to give rise to such an inference based on the intention of the parties. Gibson v. Tobey, 46 N. Y. 637, 7 Am. Rep. 397, is typical. There hogs were sold to be paid for on delivery. When they were delivered, the buyer asked the seller whether he would prefer cash or a draft on New York. The seller elected to take the draft, and the court held that it was given and taken as payment. Similar situations were involved in Hall v. Stevens, supra; Whitbeck v. Van Ness, 11 Johns. (N. Y.) 409, 6 Am. Dec. 383;

Noel v. Murray, 13 N. Y. 167; Challoner v. Boyington, 91 Wis. 27, 64 N. W. 422; Eaton v. Cook, 32 Vt. 58. None of the cases cited by the text-writers, supra, goes further than to sustain the presumption in such sales transactions. Apparently there are no letter of credit cases which have applied the rule.

In the foreign letter of credit transaction, the goods are sold on credit, but the seller wants paper which can be readily negotiated in his own market, more readily than could the buyer's negotiable paper. See Lord Cairn's discussion in Banner v. Johnston, L. R. 5 App. Cas. 157, 172. There does not seem to be much basis of fact for inferring an intention to accept the banker's letter of credit as absolute payment and to relinquish all rights against the buyer as soon as the draft is accepted. That there is no presumption that the parties so intend is the view expressed in Finkelstein, supra, and in 40 Harv. L. Rev. 294, 296, and it finds support in the letter of credit cases so far as they go. In Bell v. Moss, 5 Whart. (Pa.) 189. there is dictum to the effect that the furnishing of bank credit by the buyer is not absolute satisfaction of the debt unless so declared but is only additional security. In this case the bank had not accepted the draft drawn on the letter of credit, but it seems likely that that fact would have made no difference, from the attitude that the court took. The rule of this case was quoted with approval in Lamborn v. Allen Kirkpatrick & Co., 288 Pa. 114, 135 A. 541, in a case allowing the seller to recover against the buyer on the contract despite the fact that the seller had drawn against the bank on the letter of credit. Here again, however, the bank had not accepted. Furthermore, it was at the request of the buyer that the bank refused to pay. In Second Nat. Bank v. Columbia Trust Co., 288 F. 17, 30 A. L. R. 1299 (C. C. A. 3), a recovery was allowed against the buyer despite the fact that a draft had been drawn on the letter of credit. Here also, however, the bank had not accepted the draft, and its refusal to pay was due to notification by the buyer. In Alcock v. Hopkins, 60 Mass. (6 Cush.) 484, the seller was allowed to recover against the buyer on the contract despite the fact that he had drawn on the letter of credit and received an acceptance from the bank. The case is weak, however, on the question of presumption of absolute payment, inasmuch as the question of whether the bank acceptance was taken in payment was submitted to the jury by the consent of both parties. In Bassett v. Leslie, 123 N. Y. 396, 25 N. E. 386, and

Leslie v. Bassett, 129 N. Y. 523, 29 N. E. 834, the buyer was deemed to remain liable to the seller despite the fact that the seller had drawn under the letter of credit and obtained the bank's acceptance. The appellant attempts to distinguish these cases on the ground that the goods had been shipped and delivered to an agent of the buyer before the acceptance was obtained. Apparently this fact was not considered sufficiently important by the court to be mentioned in its opinion. The statement of facts by the court in 123 N. Y. 396, 25 N. E. 386, is that the seller drew on the bank, presented the draft, and obtained its acceptance, "and thereupon * ⁂ delivered to said corporation a bill of merchandise. * ⁂" The ground of distinction is not convincing. See, also, Bank of United States v. Seltzer, 233 App. Div. 225, 251 N. Y. S. 637, First Dept. June Term, 1931; Hindley & Co. v. Tothill Watson & Co., 13 New Zealand L. R. 13, 23; Birckhead v. Brown, 5 Hill (N. Y.) 634; Vail v. Foster, 4 N. Y. 312, 314; 35 Harv. L. Rev. 715, 737. We conclude that the authorities favor the view that there is no presumption that the seller takes a draft drawn under a letter of credit in absolute payment of the buyer's obligation to pay for the merchandise; hence upon default by the bank upon its draft the seller may look to the buyer.

Moreover, the appellant's contention that it can recover from Olivier the face amount of the accepted drafts, although it has refused to pay them, is directly contrary to Leslie v. Bassett, 129 N. Y. 523, 29 N. E. 834, and to the very recent opinion of the Appellate Division in Bank of United States v. Seltzer, supra. The latter case involved documents and contentions very similar to those of the case at bar. The bank had accepted a draft drawn under its letter of credit by an exporter in Japan. Thereafter the bank was closed by the state superintendent of banks, and upon presentation of the draft at maturity payment was refused. Just prior to maturity, the buyer, at whose request the letter of credit had been opened and who had agreed to provide funds to meet drafts drawn thereunder and had given the bank trust receipts covering the imported merchandise, offered to pay the bank the amount of the draft, plus its expenses and commissions, on condition that said payment should be held for the specific purpose of paying the draft at maturity. This offer the bank refused, claiming, as does the appellant in the present case, that it was entitled to receive unconditionally, and to hold as general assets, the offered sum. The bank thereupon sued the buyer upon his agreement, but was denied recovery; the court holding that the consideration for the defendant's promise was the bank's obligation not only to accept but to pay the draft, and that its breach of this obligation resulted in a failure of consideration which precluded the existence of any cause of action against the defendant. With this decision we agree, and we think the principles it declares are applicable to the case at bar.

Since the appellant is not entitled to collect from Olivier the face amount of the accepted drafts after repudiating payment of them, it cannot complain that the decree impresses a trust in favor of the respective draft holders upon the sums to be paid by Olivier. Nor can it complain that it is required upon receipt of such payments to relinquish its trust receipts. Its title under the latter is but a security title. In re James, Inc., 30 F.(2d) 555 (C. C. A. 2). Olivier's payments will extinguish its indebtedness to the Munroe firm and entitle it to hold the merchandise free of any claim by the appellant.

The court below reached its conclusions upon somewhat different grounds from those above expressed. Whether the decree might also be sustained upon the reasons given in the opinion of the learned District Judge, we have not found it necessary to consider.

Decree affirmed.