McCormick *v.* Harris et al., Appellants.

176

Argued October 27, 1937.

Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*John J. Haberstroh,* for appellants.

*Samuel H. Jubelirer* and *Bernard Jubelirer,* sub-
mitted a brief for appellees.

OPINION BY JAMES, J., January 27, 1938:

Plaintiff, a real estate broker, brought a suit in as-
sumpsit against Edward Harris and Luther Harris,
copartners, trading as Penn Harris Oil Company, for
commission on the sale of a gasoline station by them
to the Sinclair Oil Company, which, plaintiff alleged,
was a purchaser secured by him. At the trial, the jury
returned a verdict for plaintiff, defendants' motions for
a new trial and judgment n. o. v. were refused, and
from the judgment entered, they have appealed.

The basis of this suit is a verbal contract between
plaintiff and Edward Harris, copartner, alleged to have
been made on or about November 23, 1933, whereby

plaintiff was to procure a purchaser for any or all of the company's three gasoline stations and bulk plant. Plaintiff testified: "Yes, I told him that we had the Sinclair Oil Company interested in his stations. He said that was fine,—to go ahead and try to sell; that he was anxious to sell. He wanted to leave town. He came to my office a few days later and I asked him to sign a contract. He said he wouldn't sign a contract but if we secured a buyer he would pay our regular commissions on one or more stations ...... Mr. Harris said he would not sign a written contract but that if I secured a buyer he would pay the regular commission charged by the Altoona Real Estate Board."

At the trial, defendants offered in evidence three written contracts for the purpose of attacking the credibility of plaintiff and his witnesses and to show that the written contracts embraced the same subject matter as the alleged oral agreement. The first contract was executed on October 30, 1933 by Edward Harris, authorizing plaintiff to sell the three service stations and bulk plant in their entirety to the Shell Oil Company only, for $60,000, for which he was to be paid commissions on a sliding scale. The second contract, executed on January 30, 1934 by the same persons, restricting the sale to the Shell Oil Company and fixing the commission at $3,000, reduced the sale price to $46,000. The third contract was executed by the same persons on April 17, 1934, but provided that the company was to receive $40,000 and plaintiff was to be paid all above that sum.

It is argued by appellants that the alleged oral agreement was merged in, and superseded by, the subsequent written contracts. Whether there was an integration of the oral contract in the subsequent written contracts depends on the intent of the parties, which must be gathered from the conduct and language of the parties and the surrounding circumstances. "In deciding upon

this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation": Wigmore on Evidence (2nd Ed.) Vol. 5, p. 309. "An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration ...... if the agreement is not inconsistent with the integrated contract and ...... (b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract"; Restatement, Contracts, §240. "The fundamental question is one of the intent of the parties. Did they intend to make the writing the repository of their final understanding upon the particular matter of agreement as to which evidence is offered dehors the writing? ...... This intent is to be sought in the conduct and language of the parties and the surrounding circumstances": 70 A. L. R. 761. "In determining this intent, the court should consider the 'closeness' of the alleged parol agreement to the writing, the surrounding circumstances as well as the written contract itself, and what parties ordinarily might be expected to do under those circumstances as to inclusion of particular matters in the writing": 70 A. L. R. 771. The test to determine whether the alleged parol agreement comes within the field embraced by the written one is to compare the two and determine whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made: *Wagner v. Marcus,* 288 Pa. 579, 136 A. 847; *Gianni v. Russell,* 281 Pa. 320, 126 A. 791; *Bryant*

*v. Bryant,* 295 Pa. 146, 144 A. 904; *Hoesch v. Freedman,* 109 Pa. Superior Ct. 503, 167 A. 256.

A comparison of the oral with the written contracts discloses that under the latter plaintiff could deal with the Shell Oil Company only, while under the former he was free to deal with anyone. The written contracts provided for the sale of the entire holdings only, while the oral contract permitted a sale of any one of the properties. The sale price was fixed in the written contracts, but the oral contract left the price open to negotiation. The oral contract provided that plaintiff was to receive the regular commission charged by the Altoona Real Estate Board, while the first of the written contracts fixed the compensation on a sliding scale; the second, the sum of $3,000; and the third, "all over $40,000." The three written contracts are identical in all respects except as to the sale price and commissions. The second and third are merely modifications of the first. The oral contract, entered into between the dates of the first and second written agreements was entirely different in terms and was not referred to in the written contracts. The written contracts made no provision for a sale of less than the entire holdings or for a sale to anyone other than the Shell Oil Company.

Plaintiff testified that Edward Harris gave as his reason, for his objection to entering into a written contract for possible sales to persons other than the Shell Oil Company, the fact that he was dickering with the Cities Service Company and if he sold to them "he wasn't going to pay a commission to anyone." It further appears that plaintiff did find a prospective purchaser in the Sinclair Oil Company for one station and so informed Edward Harris. When Edward Harris was told that the Sinclair Oil Company would not pay $20,000 for one station, he instructed plaintiff to "hold off on the Sinclair Company," and continue in his efforts to sell all the properties to the Shell Oil

Company, and he would give a price for the one station if the Shell deal failed. Then, almost simultaneously with the breakdown of the negotiations with the Shell Oil Company, the appellants sold one station to the Sinclair Oil Company. Much of plaintiff's testimony is corroborated by Critchfield, plaintiff's agent, who assisted in the negotiations with Edward Harris. Under these facts, we are of the opinion that the court below committed no error in refusing to hold, as a matter of law, that the oral contract was merged in the written contracts.

Appellants also argue that the oral contract is not enforceable because it is vague, indefinite and uncertain as to its terms. It has been pointed out that the contract does not set forth its duration, plaintiff's compensation, nor the selling price. Where no period of duration of the contract is fixed, the contract continues in effect for a period which is reasonable under all the attendant circumstances. Although plaintiff's compensation was not stated as an exact sum it was definitely fixed on a specific percentage basis. This is sufficient. There are many situations where of necessity, because of the varying sizes of orders, a salesman can compute his earnings only on the basis of a certain percentage of the total sale price. In a case such as this one, where the owner of real estate is seeking a buyer, the selling price is frequently not fixed, but left open to later negotiation with the prospective buyer. The selling price is immaterial so long as the salesman's percentage of commission is fixed.

In support of their contention, appellants place much reliance on the case of *Stevens v. Doylestown B. & L. Assn.*, 321 Pa. 173, 183 A. 922. That was an action for breach of an alleged contract to convey real estate, which provided that the price was to approximate a stated sum, and the property would be conveyed to plaintiff for the sum stated, or less, if consistent with

the investment made by the vendee. It was there held that the contract was unforceable because it was lacking in certainty. That case does not rule the case at bar. In that case there was no way of fixing the sale price. In the case at bar plaintiff's compensation was fixed when the company and the buyer concluded their contract. The price agreed on by them fixed the plaintiff's compensation, since the commission was a definite percentage of the purchase price. Even though no rate of compensation had been fixed, plaintiff would still be entitled to recover the usual compensation upon a quantum meruit: *Downing v. Marks,* 318 Pa. 289, 178 A. 386. In *Shapira v. Union Trust Co.,* 306 Pa. 35, 158 A. 564, it was said: "An agent is not to be denied his commission from the seller for the sale of property under a contract to produce a satisfactory buyer at a price to be afterwards fixed by the seller, where it appears the agent was the efficient and procuring cause for the appearance of the buyer who actually buys at a price satisfactory to the seller, though the buyer procures others to negotiate the sale."

It is further argued that the court erred in its refusal to enter judgment in favor of Luther Harris, one of the copartners, as he had had no dealings with plaintiff. As regards the power of disposition of partnership realty, the rule is that a partner is not the agent of the firm: *Wilson v. McKee and McDanel,* 110 Pa. Superior Ct. 544, 168 A. 341. But this is not an effort to compel one partner to join in a conveyance for which the other partner had contracted on behalf of the partnership. This is a suit for compensation for services rendered in procuring a buyer. Both partners joined in the conveyance to that buyer and both, therefore, received the benefit of plaintiff's services. Moreover, appellants did not raise this defense in their pleadings. Section 16 of the Practice Act of May 14, 1915, P. L. 483 provides: "Neither party shall be permitted at

the trial to make any defense which is not set forth in the affidavit of defense. ......" and it has been so held in *Marshall v. Troncelliti*, 96 Pa. Superior Ct. 57; *Ruth-Hastings Glass Tube Co. v. Slattery*, 266 Pa. 288, 109 A. 695; *Lamborn v. Kirkpatrick & Co.*, 288 Pa. 114, 135 A. 541; 4 Standard Penna. Practice, §119. Having failed to raise this defense in the pleadings, it could not be asserted at the trial, nor can it now be considered on this appeal.

Although we have not attempted to answer every question which appellants have raised, our discussion has covered the essential points involved and we find no merit in any of the assignments.

The assignments of error are overruled and the judgment is affirmed.