O'Donnell, Appellant, *v.* Independence Life & Accident Insurance Company.

Argued March 26, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Daniel J. Allan,* with him *Quinn, Allan and Raab,* for appellant.

*Albert S. Shaw, Jr.,* for appellee.

OPINION BY CERCONE, J., June 21, 1974:

This is an appeal from the judgment of the Court of Common Pleas of Philadelphia entered in favor of the defendant, Independent Life and Accident Insurance Company and against plaintiff, Mary O'Donnell.

The facts of the case, which are not in dispute, are as follows: Plaintiff herein is the named beneficiary of an automobile accident insurance policy issued by the defendant to the late John P. O'Donnell on August 17, 1957. The original terms of the policy specified benefits of $1,000 in the event that death resulted from bodily injury "sustained by the wrecking of an automobile or motor-driven truck within which the Insured [was] riding or driving." Effective September 1, 1967, defendant insurance company issued a rider to the policy, whereby coverage was increased to $10,000 for loss of life resulting from the "wrecking of an automobile" on certain designated major highways or "any limited access highway within Pennsylvania, New Jersey, Delaware or Maryland." More importantly, the rider also amended the original policy by excluding injuries "sustained by a driver who does not hold a currently valid and proper driver's license."

On March 18, 1968, John P. O'Donnell, the insured, was the driver of an automobile involved in an accident on Route 309, Upper Gwynedd, Montgomery County, Pennsylvania. He held only a Learner's Permit issued by the Bureau of Motor Vehicles of Pennsylvania, but was accompanied by Harold E. Colligan, holder of a Pennsylvania Operator's License. Both men were killed as a result of this accident. Therefore, the sole issue in the instant dispute is the interpretation to be given the phrase, "valid and proper driver's license;" to wit, whether that phrase is broad enough to comprehend a Learner's Permit.

An insurance policy is of course a contract, and interpretation of its terms should be made in light of the apparent object and intent of the parties: *Humphreys v. National Benefit Ass'n*, 139 Pa. 264 (1891). However, with insurance contracts additional considerations obtain, some of which were noted in very pithy form by the Supreme Court in *Beley v. Pennsylvania Mut. Life Ins. Co.*, 373 Pa. 231, 236-37 (1953): "Obviously the right of an insured to recover under a life insurance policy should not be left to depend upon the determination of a question not governable by any definite test either legal or factual; on the contrary, its terms and conditions should be interpreted according to some definite and uniform standard. Even were it to be conceded that the meaning of any of its terms was really involved in doubt, that doubt, according to all established canons of construction, should be resolved in favor of the insured. A policy of . . . insurance is a highly technical instrument, drawn up presumably with meticulous care by legal experts on behalf of the Insurance Company, and who not only intend to use all terms in their legal sense but know how to accomplish that result. . . ." Thus, in addition to an interpretation of the terms of an insurance policy in accordance with the apparent object and intent of the parties, the interpre-

tation must be consistent with some definite and uniform standard, with any remaining ambiguities resolved against the insurer.

Since the operation of a motor vehicle is a privilege granted under license pursuant to statute, the interpretation of "valid and proper driver's license" must depend in large measure on statutory language.[1] The relevant statutory definitions are found in The Vehicle Code, Act of April 29, 1959, P. L. 58, §102, 75 P.S. §102:

"Learner's Permit.—A permit issued to any natural person to learn to operate a motor vehicle or tractor.

"License.—Any license, temporary instruction permit or temporary license issued under the laws of this Commonwealth pertaining to the licensing of persons to operate motor vehicles.

"Operator's License.—The license issued to any natural person to operate a motor vehicle or tractor."

The Vehicle Code does not define the term "driver's license;" however, the lower court and the insurance company both interpret the term driver's license and operator's license to be synonymous. As a result of that interpretation, and the fact that the Code distinguishes between "operator's licenses" and "learner's permits,"[2] the lower court concluded that the phrase "valid and proper driver's license" did not include learner's permits. We disagree.

"The term 'driver' has a meaning all its own and . . . it cannot be used interchangeably with, or given the

---

[1] "A license to operate an automobile is a permit to do what otherwise would be unlawful." 60 C.J.S., Motor Vehicles §159 at p. 810 (1969).

[2] See, e.g., 75 P.S. §§604, 606, 608, 610 and 613. The distinction in these sections, between a Learner's Permit and Operator's License, relate to the standards for issuance and the extent of the privilege granted. As such, they are not inconsistent with or in contradiction to the definition contained in Section 102 of The Vehicle Code, supra.

same meaning as the term 'operator.' " 60 C.J.S., Motor Vehicles §159 at p. 810 (1969). See also *Campbell v. State*, 274 S.W. 2d 401 (Tex. 1955); *Hassell v. State*, 194 S.W. 2d 400 (Tex. 1946). In Pennsylvania, the definition of the term "License," supra, which under The Vehicle Code can only mean *license to drive*, clearly includes *both* learner's permits and operator's licenses. Thus, a learner's permit and an operator's license are merely two forms of a license to drive in Pennsylvania. Therefore, a person holding a learner's permit, in compliance with its conditions, is no less validly and properly driving an automobile on Pennsylvania highways than a person holding an operator's license. The fact that certain conditions attach to a learner's permit is not significant. One need only refer to the back of an operator's permit to see that certain conditions may also attach to it, the effects of which create similar limitations on the lawful operation of a motor vehicle in Pennsylvania.[3] If the conditional nature of a learner's permit were the controlling factor in interpreting "valid and proper driver's license," it would certainly be arguable that only unconditional licenses would qualify under the rider. Coverage under the rider would therefore be the exception rather than the rule.

Finally, since we only hold that learner's permits and operator's licenses are subclassifications of the generic term "License," we do not render the phrase "valid and proper driver's license" meaningless. Such a phrase may still be used to preclude coverage to unlicensed drivers of motor vehicles.[4]

---

[3] The conditions which may apply to any particular operator, range from "daylight driving only" to "must wear corrective lenses."

[4] See 13 Couch on Insurance §45:1106 (2d ed. 1965). It has been held that social policy does not prohibit the coverage of an insurance policy from extending to unlicensed drivers, even though such persons are committing a crime by driving without a license.

The judgment of the trial court is reversed and judgment is entered for the plaintiff in the amount of $10,000.