490 A.2d 896

## VALE CHEMICAL COMPANY

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, and Transamerica Insurance Co., and Manufacturers' Casualty Insurance Company.

Appeal of MANUFACTURERS' CASUALTY INSURANCE COMPANY and Transamerica Insurance Company (at No. 169).

Appeal of HARTFORD ACCIDENT AND INDEMNITY COMPANY (at No. 170).

Superior Court of Pennsylvania.

Argued June 11, 1984.

Filed March 22, 1985.

512

Wayne A. Schiable, Philadelphia, for Manufacturers', appellants (at 169) and for appellees (at 170).

Matthew R. Sorrentino, Bethlehem, for Hartford, appellant (at 170) and for appellee (at 169).

Bruce W. Weida, Allentown, for Vale, appellee.

Before CIRILLO, BECK and CERCONE, JJ.

CERCONE, Judge:

The plaintiff, Vale Chemical Company, Inc. (Vale), brought a declaratory judgment action against two of its former insurers, Manufacturers' Casualty Insurance Company (Manufacturers') and Hartford Accident and Indemnity Company (Hartford), as well as Transamerica Insurance Company as successor in interest to Manufacturers'.[1] The action was brought to determine which, if any, of these insurers has a duty to defend and, if necessary, to indemnify Vale in an action brought against Vale by a Sandra Smith in 1980 in the Circuit Court of Cook County, Illinois.[2]

In order to understand the contentions of each party to this suit, we must examine Sandra Smith's claim against Vale since her lawsuit is the underlying basis for determining the insurers' obligations under their policies. *Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959); *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 105 A.2d 304 (1954). In her lawsuit, Ms. Smith claims damages for personal injuries in the nature of vaginal cancer. She allegedly sustained this injury as a result of her mother's ingestion during her pregnancy with Sandra in 1952–53 of a drug, stilbestrol. The drug was produced and sold by Vale and carried the trade name, diethylstilbestrol or DES (hereinafter DES).[3] Ms. Smith alleges that the DES

1. Transamerica will be included in the term "Manufacturers'."

2. Manufacturers' and Hartford's policies were issued in Pennsylvania and all terms were to be performed in Pennsylvania, making Pennsylvania law applicable. *Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796 (1964).

3. The drug, DES, was prescribed for pregnant women to prevent possible spontaneous abortion and to enable them to carry their pregnancies to full term and also for treatment of estrogenic deficiencies. Although we do not consider the medical testimony taken in this case in our determination of the issues, since it must rest solely on the legal significance of the policies, we do take judicial notice of the nature and character of the effects of DES on a fetus in utero, as revealed by the medical testimony, i.e., that ingestion of DES by a woman during the first trimester of pregnancy may interfere with the normal process of tissue replacement on the vaginal walls of the

set in motion a misalignment of vaginal cellular growth during her fetal development and is the causative event of vaginal cancer which became manifest and so diagnosed in 1978 when Ms. Smith was 25 years old. She alleges that Vale's negligence is the proximate cause of her condition. At the time Sandra's mother ingested DES, Vale was insured under a policy with Manufacturers'. At the time Sandra's cancer became manifest and diagnosed, Vale was insured under a policy issued by Hartford. The question posed by Ms. Smith's allegations is how do they relate to the insurers' responsibilities under the policies they issued to Vale to defend and, if necessary, to indemnify Vale in the Sandra Smith case against Vale, the manufacturer of DES.

Vale contends that both insurers are responsible to defend and, if necessary, to indemnify it in the Sandra Smith case, reasoning that any step in the progression of a DES-related disease, from exposure to manifestation, triggers coverage of Vale's liability under each policy. Manufacturers', on the other hand, contends that policy coverage was triggered only when the injury became manifest and diagnosed in 1978 which was the time the Hartford policy was in effect. Manufacturers' also argues, that even if Sandra had suffered bodily injury during her fetal period, it was not the result of an accident as provided by the policy, and thus, outside the policy coverage. Hartford, understandably, contends that the policy coverage was triggered at the time of ingestion of DES by Sandra's mother at which time the Manufacturers' policy was in force and effect.

All the parties filed cross-motions for summary judgment and, after oral argument, the lower court entered summary judgment in favor of Vale, the plaintiff, against both de-

female fetus. The resulting state of incomplete tissue replacement is known as vaginal adenosis, which is thought to create a disposition to the development, later in life, of clear cell adenocarcinoma of the vagina. It is known with reasonable medical certainty that adenosis occurs during the first trimester of pregnancy and, additionally, that the cells which later make the transition to adenocarcinoma are present in the embryonic development by the end of the first trimester.

fendants.[4]   Both insurers have appealed the grant of summary judgment and their appeals have been consolidated.[5]

## Manufacturers' Policy

■   The Manufacturers' policy (the policy in force and effect at the time Sandra Smith's mother ingested DES) contains the following language:

Coverage A Bodily Injury Liability.

To pay on behalf of the Insured, within the limits expressed in the declarations, all sums which the insured shall become obligated to pay by reasons of the liability imposed upon the Insured by law, for damages ... *because of bodily injury, sickness or disease,* including death at any time resulting therefrom, *suffered or alleged to have been suffered by any person or persons while this policy is in force, as a result of any accident* occurring by reason of the existence, possession, consumption or use of any product manufactured, sold, handled, delivered or distributed by the Insured during the time of this policy or prior thereto ... (emphasis added).

The policy further follows:

bodily injury shall be construed to mean also sickness, disability, or mental anguish resulting from the existence, possession, consumption or use of any product, covered by the policy...

The two issues to be decided concerning coverage to be provided by the Manufacturers' policy are (1) Did Sandra Smith "suffer" bodily injury within the terms of Manufacturers' policy coverage, and (2) If she did suffer "bodily injury," "sickness" or "disease" while in utero, what is the effect of the provisional clause, "as a result of any acci-

---

**4.**  The issues in this case concern the proper construction of insurance policies.   This is a matter of law.   *Adelman v. State Farm Mutual Auto Ins. Co.,* 255 Pa.Super. 116, 386 A.2d 535 (1978); *Baldwin v. Magen,* 279 Pa. 302, 123 A. 815 (1924).   It is properly resolved by the court on motion for summary judgment in a declaratory judgment proceeding. Pa.R.C.P. 1035; *Pa. P.U.C. Bar Association v. Thornburgh,* 62 Pa. Cmwlth. 88, 434 A.2d 1327 (1981).

**5.**  H.H. Porter Co., Inc. and Armstrong World Industries, Inc. were permitted to file after oral argument on amicus briefs.

dent," which Manufacturers' contends did not occur in this case.

■ Manufacturers' presents three points in its argument on the first issue, contending that Ms. Smith did not "suffer" physical injury during its policy period. The first point on this issue is that Ms. Smith failed to allege in utero suffering in her initial complaint. As the result of this failure to so allege, Manufacturers' maintains that the trial court went beyond the pleadings in the underlying case in determining the parties' duty to defend. This argument is predicated on the fact that in her complaint against Vale, Ms. Smith averred that she "was diagnosed to be *suffering* from clear cell adenocarcinoma of the vagina in September, 1978." (emphasis added) Since it is settled that the obligation of an insurer to defend an action against the insured is fixed solely by the allegations of the complaint in the underlying action, *Wilson v. Maryland Casualty Co., supra*, Manufacturers' contends that Ms. Smith did not allege any "suffering" during the time its policy was in force, that is, at the time of her mother's ingestion of DES and, therefore, they have no duty to defend Vale in the underlying action. We disagree.

■ Manufacturers' view of the complaint against Vale, particularly its reliance upon one paragraph of that pleading to absolve itself of a duty to defend, it much too narrow. The complaint not only alleged that the adenocarcinoma was diagnosed in 1978, but also that it was proximately caused by her mother's DES ingestion in 1952 and 1953, and that the DES was manufactured by Vale. It is undisputed that Vale was insured in 1952 and 1953 under a policy with Manufacturers'. We also take judicial notice here of the medical history concerning the effect of DES effect on a fetus.[6] In view of the foregoing, we have no hesitancy in

6. In 1970 a statistical association was shown between the ingestion of DES by pregnant women and the occurrence of vaginal clear-cell adenocarcinoma (cancer) in the female offspring exposed in utero to DES. See Herbst and Scully, Adenocarcinoma of the Vagina in Adolescence: A Report of 7 Cases Including 6 Clear Cell Carcinomas (so-called mesonephromas), 25 Cancer 745–57 (1970); See also Stafl and Mattingly, Vaginal adenosis: A Precancerous Lesion?, 120 Am.J. Obstet.Gynecol. 666–73 (1974).

concluding that Smith's claim clearly comprehended an injury potentially within the scope of the Manufacturers' policy. *See Cadwallader v. New Amsterdam Cas. Co.,*[7] *supra; Brugnoli v. United Nat. Ins. Co.,* 284 Pa.Super. 511, 426 A.2d 164 (1981). Furthermore, we note that Illinois courts[8] allow for liberal amendment of pleadings so as not to defeat a cause of action because of inartful pleading. While we have no jurisdiction to order the Illinois court to allow for amended pleadings, we see no reason why that court will not allow such amendments as are appropriate. *See* Ill. Stat.1977, ch. 110, par. 33(3) and *Bebee v. Fields,* 79 Ill. App.3d 1009, 35 Ill.Dec. 264, 398 N.E.2d 1214 (1979) ("To sustain the dismissal of a complaint on the basis of a correctable pleading defect would be unfair." 35 Ill.Dec. at 269, 398 N.E.2d at 1219.)

■■■ The second point of Manufacturers' contention that bodily injury was not suffered by "any person" while its policy was in effect is answered by the law of Pennsylvania which holds that a child born with embryonic injuries can

7. In *Cadwallader* the court quoted extensively from the opinion of Judge LEARNED HAND in the case of *Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750 (2d Cir.1949). Judge HAND'S cogent analysis bears repeating here.

   In finding the insurer obliged to defend a complaint filed against the insured which alleged an injury that "might or might not" be covered under the policy, Judge HAND, speaking for the court observed: "'... the injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. When, however, *as here, the complaint comprehends an injury which may be within the policy, we hold that the promise to defend includes it.*

   \*   \*   \*   \*   \*   \*

   'It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, it was the duty of the defendant to undertake the defence, until it could confine the claim to a recovery that the policy did not cover ...' (Emphasis supplied.)" *Cadwallader,* 396 Pa. at 589–90, 152 A.2d at 488, *quoting Lee,* 178 F.2d at 752–53.

8. Cook County, Illinois is the locale of Ms. Smith's lawsuit against Vale.

seek damages for those injuries caused by the negligence of another. *See Sinkler v. Kneale,* 401 Pa. 267, 164 A.2d 93 (1960); *Transamerica Ins. Co. v. Bellefonte Ins. Co.,* 490 F.Supp. 935 (E.D.Pa.1980).

Manufacturers' final point on the issue of whether Sandra Smith suffered bodily injury at the time of her mother's ingestion of DES is premised on Manufacturers' contentions that "bodily injury," "sickness" or "disease," within the meaning of the policy, refer only to the time the condition manifests itself.

This issue would appear to be one of first impression in the appellate courts of Pennsylvania. Other jurisdictions have wrestled with various aspects of the question as to when "bodily injury" occurs, that is, whether it occurs at time of the initial assault of a disease when it does not manifest itself, or, at time of its ultimate manifestation. No clear majority position has evolved. *A.C. & S., Inc. v. Aetna Cas. & Sur. Co.,* 576 F.Supp. 936 (E.D.Pa.1983). The Manufacturers' policy clearly provided that the injury and not the occurrence of accident must take place during the policy period.

In the case of *Eli Lilly v. Home Ins. Co.,* No. 82–0669 (D.D.C. April 12, 1984) a case of first impression under Indiana law, a federal court held that any insurer providing coverage to a DES manufacturer between the initial ingestion of the drug and the manifestation of a DES-related disease is fully liable to the manufacturer for indemnification. The *Lilly* court took note of the three views of when "bodily injury" occurs in latent disease cases. Under one view, the injury is found to have occurred at the time of exposure to the hazardous substance. *Porter v. American Optical Corp.,* 641 F.2d 1128 (5th Cir.1981), *cert. denied* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650; *Ins. Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980), *cert. denied* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). A second view is that the injury takes place when the disease manifests itself. *Eagle-Picher Industries, Inc. v. Liberty Mutual Ins. Co.,* 682 F.2d 12

(1st Cir.1982), *cert. denied,* 460 U.S. 1028, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983). The third view is the "multi-trigger" theory which holds that any insurer that covered the risk between exposure and manifestation of the disease is liable for defense and indemnification. After finding that Indiana courts have not addressed the "three views" issue and that the policy provision at issue was ambiguous, the court adopted the multi-trigger theory. The court, rather than inquiring into extensive evidence, noted that Indiana courts apply the basic principle of interpreting insurance policies to give effect to the parties' reasonable expectations. Thus, the court ignored the insurers' evidence that Lilly's actual intent was to purchase single-trigger coverage (exposure or manifestation). For this reason, the court rejected the manifestation theory, finding it to be based on extrinsic evidence regarding actual intent. The court also rejected the exposure theory, finding that theory to be based on medical evidence of the etiology of the particular disease. Consequently, the court based its rejection of the exposure theory on the strong public policy in favor of promoting coverage.

In the *Lilly* court' view, only the multi-trigger theory is based on the principle that where an insurance policy is ambiguous, it should be interpreted to give effect to the reasonable expectations of the parties. The court found that Lilly, the insured manufacturer of DES, could reasonably have expected that, in purchasing its policies, it was obtaining coverage for all future liability arising from the use of DES.

In *Keene Corp. v. Ins. Co. of North America,* 667 F.2d 1034 (D.C.Cir.1981), *cert.* denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875, rehearing denied, 456 U.S. 951, 102 S.Ct. 2023, 72 L.Ed.2d 476 (1982), the court held that the policy language before it was not helpful in deciding when "bodily injury," "sickness" or "disease" occurred. Although the *Keene* case involved an asbestos-related disease, its language is applicable to our case. Therein, the court stated that the terms "bodily injury," "sickness" or "dis-

ease" simply lacked the precision necessary to identify a point when the physical damage or debility occurred so as to determine adequately at which time coverage was triggered. Without assistance from case law or any specific terms of the policy before it, the *Keene* court held that insurers, from time of exposure to time of manifestation, are responsible for the defense and, if necessary, the indemnification of the insured. It came to this conclusion by utilizing equitable principles with insurance principles and the general terms and purposes of the policy.

■ In the case of *A.C. & S., Inc. v. Aetna Cas. & Sur. Co., supra,* the court adopted the *Keene* resolution of the "bodily injury" issue. It said that courts which consider the three views of when "bodily injury" occurs in latent disease cases, adopt an interpretation designed to "promote coverage" and to fulfill the dominant purpose of providing the maximization of coverage. Because the *A.C. & S.* court found the terms "bodily injury," "sickness" or "disease" in the policies before it to be ambiguous as to the time of occurrence, it adopted the *Keene* multi-trigger principle so as to afford the insured maximum coverage.[9] As the *Keene* court said, "in construing the policies' coverage of liability for asbestos-related diseases, our objective must be to give effect to the policies' dominant purpose of indemnity." 667 F.2d at 1041. In *Keene,* recovery was allowed for an asbestos-related disease from time of exposure through time of manifestation.

Since an asbestos-related disease is similarly separated in time from its initial assault to the time of the manifestation of its debilitating effect, we see no reason not to adopt this same approach to DES-related diseases. If the concept of exposure were to be adopted, it would trigger coverage only under the policy in force at the time of ingestion. That is to say, a DES exposure would be considered a discrete injury

**9.** The question has been faced by the Philadelphia Court of Common Pleas. *See Crown Cork & Seal Co., Inc. v. Aetna Cas. & Sur. Co.,* No. 1292 September Term, (Philadelphia Court of Common Pleas, August 2, 1983) (*Keene* was adopted in an asbestos-related case).

and there could be no future injury related to the use of DES. Consequently, no insurable coverage would be available at time of manifestation of the disease.[10] By the same token, if we were to adopt the "manifestation" theory, the claim for injury at time of ingestion would not be cognizable at law even though physical injury was suffered at that time and despite the fact that a products liability insurance policy was in force and effect at the time of ingestion of DES. *See Kremers-Urban Co. v. American Employers Insurance Co.*, 119 Wis.2d 722, 351 N.W.2d 156 (1984) (sufficiency of allegations to meet requirements of policy coverage).

As we find that the policy language in the instant case does not direct us unambiguously to either an "exposure" or "manifestation" interpretation, we must look to the general expectations of the insured at the time of purchase in order to determine the extent of coverage. *See, e.g., Blue Anchor Overall Co. v. Pennsylvania Lumberman's Mut. Ins. Co.*, 385 Pa. 394, 123 A.2d 413 (1956) and *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978). Manufacturers' policy was entitled "Products Public Liability Policy." The fact that Vale purchased a general products liability policy indicates that it reasonably expected that it was free of the risk of becoming liable for latent injuries which were incurred during the policy period but manifested at a later time. There is no clear indication in the Manufacturers' policy, considering its totality, that the parties intended to exclude coverage for these latent diseases.

In view of the foregoing discussion, we have no hesitancy in finding that the language "bodily injury," "sickness" or "disease" includes coverage from time of exposure to time of manifestation. We note that this

10. *See American Motorists Ins. Co. v. E.R. Squibb*, 95 Misc.2d 222, 406 N.Y.S.2d 658 (Sup.Ct.1978); *Ins. Co. of North America v. Forty-Eight Insulations, Inc., supra* (asbestos-related disease cases). *See Transamerica Ins. Co. v. Bellefonte Ins. Co., supra*, where court found disease had taken place at time of ingestion and manifestation but in behalf of two different insureds.

holding is limited to the issue arising pre-trial as to which insurance company has a duty to defend or indemnify the insured. At trial, insofar as the Manufacturers' policy is concerned, Ms. Smith will be obliged to substantiate the allegations in her complaint, *inter alia,* that her mother ingested DES while she was pregnant and that DES was the proximate cause of her cancerous condition.

The second issue raised by Manufacturers' can be stated as follows: Did Sandra Smith's injury arise "as the result of any accident?" Unless the injury was the result of an accident, according to the insurer, Sandra Smith's claim would be outside the ambit of the policy and Manufacturers' would have no obligation to provide a defense or indemnity for Vale. More specifically, Manufacturers' contends that Sandra Smith's adenocarcinoma did not result from any sudden, distinct *and identifiable* events and that, therefore, her disease was not the result of an accident.

While neither the insurer nor the insured may have been fully aware of the characteristics of DES-related diseases at the time of the writing of the policy, the taking of risk is an inherent incident to the insurance industry limited only by the terms of policies. Looking at the composite terms of the policy, its language exhibits no intention to exclude coverage of diseases with long gestation periods. This court, then, will not interpret the phrase "as a result of any accident" as providing such an exclusion.

There are certainly many drugs whose onset of ill effects cannot be precisely determined. Manufacturers' contends that even if it conceded that Sandra Smith suffered injury as the result of her mother's ingestion of DES, it would still not be responsible under the policy unless Sandra Smith's injury was the result of an accident. This is an illusory attempt at a defense since there is no evidence at this point in the case that a DES-related disease does not arise out of an accident. But, more important, there is an ambiguity between the clause "as a result of any accident" and the general terms and objectives of the policy. What is meant by the phrase, "as a result of any accident?" Does the

policy refer to Vale's sale of its product to the public as an accident? Does it refer to Sandra Smith's mother's ingestion of DES as an accident? Or is the phrase so specific and clear in its context to the remaining provisions of the policy as to exclude Sandra Smith's vaginal adenosis from coverage under the Manufacturers' policy issued to Vale. As to this, in these pre-trial proceedings, who can say? To ask the question is to reveal the glaring ambiguities contained in this inscrutable phrase, "as a result of any accident."

This court has held that if it is determined that the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, the language must be construed most strongly against the insurer, and the construction most favorable to the insured must be adopted. *See Cohen v. Erie Indemnity Co.*, 288 Pa.Super. 445, 448, 432 A.2d 596, 597 (1981); *see also Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983).[11] It has also been held that if a policy is reasonably susceptible to two interpretations, it will be construed in favor of the insured in order not to defeat, without necessity, the claim to indemnity which the insured seeks to obtain. *Armon v. Aetna Cas. & Sur. Co.*, 369 Pa. 465, 87 A.2d 302 (1952). In the instant case, there is an irrefutable clash between the phrase "as a result of any accident" and the clearly intended purpose of protection for the insured against claims of diseases arising out of use of its products.

The meaning of the provisional clause in this case, "as a result of any accident," was not clearly drafted and was cumbersomely worded. In view of the potential variations,

---

**11.** Based on his view that an insurance policy is a contract of adhesion, Professor (now Judge) Keeton has suggested that construction of these contracts be guided by the following general principle:

The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv.L.Rev. 961, 967 (1970); *Keene*, 667 F.2d at 1042 n. 12.

grades and origins of diseases that might arise out of the use of pharmaceutical products, the clause should have been more clearly explained in the policy in order to be binding. *Klischer v. Nationwide Life Ins. Co.*, 281 Pa.Super. 292, 422 A.2d 175 (1980); *see also Standard Venetian Blind Co. v. American Empire Ins. Co., supra.*

In view of the foregoing, we find that the clause "as a result of any accident" is ambiguous and, therefore, cannot be considered as a refutation of the reasonable expectations of the insured.

Therefore, we find Manufacturers' to be liable for the defense and possible indemnity of Vale in this case.

## The Hartford Policy

Hartford issued a comprehensive personal liability policy to Vale which was effective December 1, 1977 to December 1, 1978, and which provided:[12]

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence,* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of bodily injuries or property damage. (emphasis added)

The pertinent definitions appearing in the Hartford policy are:

"Bodily injury" means bodily injury, sickness or disease sustained by any person *which occurs during the policy period;* including death at any time resulting therefrom ... (emphasis added)

"Occurrence" means an accident, including continuous or repeated exposure to conditions, which results in bodily

---

12. Here, interestingly, the phrase "bodily injury ... caused by an occurrence" is substituted for the phrase "as a result of any accident" which appeared in the 1952–53 Manufacturers' policy. This new wording was arrived at by insurance policy writers in the late 1960's to avoid confusion brought about by the phrase "as a result of any accident" which appeared in the Manufacturers' policy. *See Elli Lilly v. Home Ins. Co., supra.*

injury or property damage neither expected nor intended from the standpoint of the insured.

There is no question in this case that diagnosis and manifestation of Ms. Smith's cancerous condition in 1978 was the result of an "occurrence" which took place during Hartford's policy coverage. The Hartford policy provided coverage for injuries taking place during the policy period and brought about by an occurrence. Hartford argues, however, that that occurrence was the injury caused by exposure to DES, the in utero cellular changes, and not the manifestation of the cancer diagnosed in 1978. In support of this argument, Hartford urges that this court is bound to accept the affidavit of its specialist and conclude that the "injury" caused by DES ingestion occurred in utero because no other medical evidence had been tendered as to this issue. At this stage in the proceedings, we need not make the factual decision urged by Hartford. As we previously stated, the obligation of an insurer to defend an action against the insured is fixed solely by the allegations of the complaint in the underlying cause of action. *Wilson v. Maryland Casualty Co., supra.* Ms. Smith alleged that she suffered an injury in 1978, during Hartford's policy period. It is upon that factual allegation that we must interpret the meaning of Hartford's policy.

■ The policy language clearly does not limit coverage to incidents of exposure during the policy period, but rather to conditions which result in bodily injury during the policy period. The fact that the policy places a time of occurrence clause in its definition of "bodily injury" and not in its definition of "occurrence" supports our conclusion that it was the intention of the parties to include coverage for a situation such as the one in this case. Based on the interpretation of very similar policy language, in a DES case, the Supreme Court of New York reached the same conclusion in *American Motorists Ins. Co. v. E.R. Squibb & Sons,* 95 Misc.2d 222, 406 N.Y.S.2d 658 (1978). *See also Kremers-Urban Co. v. American Employers Ins. Co., su-*

*pra,* (Court restricted its interpretation of coverage to the language of the insurance contracts.)

■ Hartford further attempts to avoid its obligation to Vale by arguing that Vale failed to establish the conditions precedent entitling it to enjoy the benefits of the Hartford policy. In particular, Hartford contends that Vale, prior to the Hartford policy, should have expected or anticipated Smith's injury. As the policy provided for coverage of bodily injury "neither expected nor intended," Hartford claims Vale failed to establish that it had no forewarning of the Smith claim. Thus, it is submitted that a material fact remained in dispute. Since a summary judgment should only be granted where there is no genuine issue of material fact, *Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983); *Williams v. Pilgrim Life Ins. Co.,* 306 Pa.Super. 170, 452 A.2d 269 (1982), Hartford contends summary judgment should not have been entered in Vale's favor. Nevertheless, a careful reading of the pleadings does not support Hartford's position. In paragraph ten of its amended complaint, Vale averred that it had "complied with all obligations required of it under the aforesaid insurance policy." Hartford's amended answer, paragraph ten "denied that [Vale had] satisfied all requirements of the Hartford Insurance policy entitling it to a defense as requested." We fail to see how either pleading raised an issue as to Vale's expectations of the Smith suit. Such was not placed in issue and therefore the trial court was not required to consider it.[13] *See Boyle v. Pennsylvania R. Co.,* 346 Pa. 602, 31 A.2d 89 (1943); *McCormick v. Harris,* 130 Pa.Super. 175, 196 A. 885 (1938).

We hold, for the reasons stated above, that both Manufacturers' and Hartford are required to defend Vale in the underlying case and, if necessary, to indemnify Vale.

13. Such holding is especially appropriate here since Hartford itself moved for summary judgment contending that no material facts were in dispute.

Therefore, we affirm the lower court's grant of summary judgment in favor of plaintiff and against both defendants.

Order affirmed.