## Usner v. Harleysville Insurance Company

*Christina L. Hausner,* for plaintiff.
*Joel D. Smith,* for defendant.

ECKMAN, *P.J.,* March 16, 1988 — Before the court are the respective motions for summary judgment initially filed by defendant, Harleysville Insurance Company, and later by plaintiff, Harold R. Usner.

Plaintiff commenced this action for breach of contract on November 11, 1985, by filing a complaint alleging that defendant refused to provide coverage to plaintiff under the theft and/or comprehensive provisions of his automobile insurance contract. Defendant filed an answer and new matter alleging that plaintiff's claim was not within the scope of the policy's coverage and that plaintiff failed to comply with certain conditions precedent to payment. Plaintiff filed a reply to the new matter and defendant subsequently filed its present motion for summary judgment on May 11, 1986. Thereafter, the parties filed a stipulation of certain facts and plain-

tiff filed a cross motion for summary judgment on August 21, 1987. Briefs having been filed by the parties, the matter is ready for disposition.

The principles to be applied in ruling upon a motion for summary judgment are well settled. Summary judgment shall be rendered only "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). Summary judgment should be granted only in the clearest of cases. *Granthum v. Textile Machine Works*, 230 Pa. Super. 199, 326 A.2d 449 (1974). The court must view the evidence in the light most favorable to the nonmoving party, and any doubts must be resolved against the entry of the judgment. *Yaindi v. Ingersoll-Rand Company*, 281 Pa. Super. 560, 422 A.2d 611 (1980).

The material facts are not in dispute as the parties have agreed that the stipulation of facts and motions for summary judgment set forth the facts of the case. In the beginning of August 1985 plaintiff advertised his 1981 Cadillac automobile for sale. On August 7, 1985, Ben Blessing indicated that he wished to purchase the automobile and plaintiff and Blessing entered into a contract for the sale of the automobile for the sum of $8,500, the fair market value. On August 7, 1985, Blessing gave plaintiff a check for $8,500 drawn on the account of Computer Auto Sales Ltd. and counter-signed by Joanne Wells and Ben Blessing. Plaintiff signed the title in blank and delivered possession of his automobile to Blessing on August 9, 1985. Blessing then resold the vehicle to Hershey Motors at less than fair market value on August 10, 1985. Blessing's check was returned to plaintiff on August 12, 1985, because it

was drawn on a closed account. Subsequently, Blessing was charged with the crime of theft by deception by the Pennsylvania State Police for this transaction and pleaded guilty on March 18, 1986. Plaintiff did not recover possession of title to the vehicle and submitted a claim to defendant on his automobile policy issued by defendant and effective during the relevant period. Plaintiff filed his claim pursuant to the provisions of the insurance contract under clause "G", which provides that defendant will "pay for loss . . . caused by theft or larceny." Defendant refuses payment on the basis that there was no theft or larceny.

Since there are no material facts in dispute, we proceed directly to the issue of whether either moving party is entitled to judgment as a matter of law. That determination, of course, depends upon the construction of the insurance contract provisions, which may properly be decided as a matter of law by summary judgment. *Vale Chemical Co. v. Hartford Accident and Indemnity Co.*, 340 Pa. Super. 510, 516, 490 A.2d 896, 899 (1985); Goodrich-Amram 2d §1035(a):7 at 440.

The "Coverage G — Theft" clause under Part III of the insurance contract provides that defendant will "pay for loss to the owned automobile or to a non-owned automobile caused by theft or larceny." Plaintiff contends that since there was a statutory theft, within the meaning of section 3922 of the Crimes Code,[1] his loss is clearly compensable. Defendant contends that plaintiff's loss did not amount to a theft or larceny because plaintiff voluntarily and freely transferred title to the vehicle as opposed to an initial unauthorized taking of the vehicle. De-

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, §1 as amended; 18 Pa.C.S. §3922.

fendant contends that plaintiff's remedy is a breach of contract action against Blessing. The parties have not presented to us and our own research has failed to disclose any relevant Pennsylvania cases on point.

When interpreting the language in an insurance policy, the court is guided by well-established principles. An insurance policy is a contract which should be construed in light of the intent of the parties. *O'Donnell v. Independence Life and Accident Insurance Co.*, 229 Pa. Super. 259, 261, 323 A.2d 387, 388 (1974). Where the language in a policy is unambiguous the words should be given their plain and ordinary meanings. *Eddystone Fire Co. v. Continental Insurance Co.*, 284 Pa. Super. 260, 425 A.2d 803 (1981).

However, when ambiguities arise, "[t]he rule is that, where, by reason of ambiguity in the language employed in a policy or contract of insurance, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." *Shamey v. State Farm Mutual Automobile Insurance Co.*, 229 Pa. Super. 215, 221, 331 A.2d 498, 501 (1974) (citing 18 P.L.E. Insurance §94 at 554 (1959)): see also *Snader v. London & Lancashire Indemnity Co.*, 360 Pa. 548, 62 A.2d 835 (1949). The reasoning behind this rule is based on the fact that the insurer prepares the policy, presumably, with the purpose of protecting itself against future claims to which it is unwilling to accept liability. *Snader, supra*. Furthermore, when construing terms which are not defined in the policy and which have legal or technical meanings, those meanings will be applied absent a contrary intention stated in the policy. *Beley v. Pennsylvania Mutual Life Insurance Co.*, 373 Pa.

231, 95 A.2d 202 (1953). (The term war, absent a definition in the life policy, is construed in its legal sense in light of the rule construing ambiguities in favor of the insured); see also, *Estate of Noteboom,* 473 Pa. 32, 373 A.2d 737 (1977).

By the language of the contract, defendant used the terms theft or larceny to define the scope of its liability to plaintiff but nowhere in the contract did defendant define the meaning of those terms. As the arguments offered by the parties suggest, an ambiguity exists as to the exact meaning of theft. A simple application of the *Shamey* rule of construction, *supra,* persuades us that the ambiguity should be resolved in favor of the insured. A closer analysis, however, also persuades us that there are even more substantial reasons for concluding that plaintiff's loss falls within the meaning of theft.

Theft has a technical legal definition, necessitating our review of the Crimes Code, *supra,* for guidance in interpreting the terms of the insurance policy. Section 3922 of the Crimes Code, *supra,* defines the crime to which Blessing pleaded guilty and provides, inter alia:

"Theft by deception:

"a) *Offense defined* — A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

"(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise; . . . "

This offense contains the elements of the offense of cheating by false pretenses, as defined in the pri-

or criminal code of Pennsylvania. *Commonwealth v. Feldman,* 243 Pa. Super. 408, 365 A.2d 1289 (1976).

Section 3902 of the present Crimes Code[2] provides for the consolidation of theft offenses under the crime of theft and the official comment thereto states the purpose of such consolidation, as follows:

"The crime of 'theft' is intended to embrace the offenses heretofore known as larceny, embezzlement, *false pretense,* extortion, blackmail, fraudulent conversion, receiving stolen property, and the like. It is intended by this subsection and this article to eliminate the technical distinctions between larceny, fraudulent conversion, etc. The basic philosophy adopted is that if a person takes something which does not belong to him, this constitutes theft. It is contemplated that the indictment will state the facts justifying the conclusion that a theft was committed." (emphasis supplied)

Instantly, plaintiff's loss resulted from theft by deception, of which Blessing was convicted, and was a theft as defined by the Crimes Code. The crucial point is that Blessing created a false impression of his intention to pay for the automobile with no actual intention of paying for it. This conclusion is bolstered by the facts that Blessing gave plaintiff a check drawn on a closed account, obtained the title to the automobile and within three days of entering the contract sold the automobile for less than the fair market value. Based on these facts, we conclude that plaintiff's loss was from theft in its technical legal sense. Since theft is not otherwise defined in the policy, we believe that the loss suffered by plaintiff is a theft within the meaning of the terms of the pol-

2. Crimes Code, *supra,* 18 Pa.C.S. §3902 (Suppl.).

icy. *Beley v. Pennsylvania Mutual Life Insurance Co., supra.*

Furthermore, we are persuaded that it would be reasonable for an insured to ordinarily expect this type of loss to be covered by the policy contract. The plain and ordinary meaning of theft to an insured would reasonably include the loss of possession of the vehicle by a theft crime, whether the crime occurred through deception or by an unauthorized use of the vehicle.

Finally, we are persuaded by plaintiff's extensive recitation to authority from other jurisdictions, which support the proposition that absent a definition in the policy, the modern trend is to expand the definition of theft as the Crimes Codes have done. See *Mann v. State Farm Mutual Insurance Co.,* 698 P.2d 925, 928-929 (Okla. 1985) and cases cited therein.

Next, we address defendant's contention that the language of the policy required plaintiff to bring an action in replevin as a condition precedent to receiving payment for the loss. The relevant provisions are listed in the section of the policy entitled "Conditions", paragraph 6, which provide, inter alia, that "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy. . . ."

Defendant alleges that plaintiff failed to comply with paragraph 8, which reads, inter alia: "In the event of loss the insured shall: (a) protect the automobile . . . and any further loss due to the insured's failure to protect shall not be recoverable under this policy; . . ."

Plaintiff, however, argues that paragraph 5 relieves him of any obligation to protect the automobile when such action would require him to bring suit. Paragraph 5 reads, inter alia:

"The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of the accident."

Since an obvious contradiction exists by these seemingly opposite contract provisions, we believe that the rules of construction, *supra,* apply equally as well to this issue. Words in a policy, absent definitions, are to be construed in their plain and ordinary sense. *Eddystone Fire Co. v. Continental Insurance Co., supra.* Ambiguities are to be resolved in favor of the insured. *Shamey v. State Farm Mutual Automobile Insurance Co., supra.*

Clearly, defendant's policy imposes a duty upon plaintiff to protect the automobile. Applying the plain and ordinary meaning to the term protect, we are not persuaded, however, that protect means to regain possession by means of a replevin action since paragraph 5 directs plaintiff not to "incur any expense." This language strongly suggests that no duty was contemplated by the parties to institute an action in replevin to recover the automobile.

Hence, we believe that the plain meaning of the words in the policy does not include a duty to protect a vehicle not in the possession of plaintiff. See *Pannell v. Missouri Insurance Guaranty Assoc.,* 595 S.W. 2d 339 (Mo. 1980). Even if there is some ambiguity as to the plaintiff's duty, such an ambiguity must be resolved in favor of the insured. *Shamey v. State Farm Mutual Automobile Insurance Co., supra.*

Accordingly, we enter the following

## ORDER

And now, March 16, 1988, the motion for summary judgment filed by defendant, Harleysville In-

512

surance Co.; is hereby dismissed and the cross motion for summary judgment filed by plaintiff, Harold R. Usner, is granted. Summary judgment is entered in favor of plaintiff against defendant in the amount of $8,500.